This case presents the issue whether the City of Prattville may terminate fire protection services to the residents and businesses located within its police jurisdiction.[1] On October 19, 1993, the Prattville City Council passed an ordinance that withdrew fire protection from Prattville's police jurisdiction. Originally, the ordinance was to be in effect as of January 1, 1994; however, its effective date was delayed until May 1, 1994. On April 29, 1994, Leon Joyner, the owner of a business located within the Prattville police jurisdiction, sought declaratory relief and an order restraining the City from terminating the fire protection. On April 30, 1994, the trial judge temporarily restrained Prattville from terminating fire protection, and on May 15, 1994, after a hearing on the merits, the trial court entered a preliminary injunction. Prattville appeals.
Although this appeal presents several questions, the dispositive issue is whether Prattville owes a duty to provide police and fire protection[2] to residents of the police jurisdiction and to people who, like Joyner, own businesses within the police jurisdiction. The trial court's order set out the general issue in this case as follows:
 "This lawsuit may more appropriately be said to present an ultimately broader issue of whether a municipality owes a duty to provide police and fire protection to individual and/or business residents located within the statutorily defined police jurisdiction of the municipality. Several questions might be posed for purposes of inquiry and analysis of the existing rationale found in our case law. For instance, if a 'duty' does exist for a municipality to provide police and fire protection to its police jurisdiction, is the 'duty' derivative from the purpose for the statutory creation and definition of the area around a city known as the 'police jurisdiction'? Or does any existing 'duty' to provide such police and fire protection only arise when a municipality collects certain revenue from the businesses and residents of the police jurisdiction? If so, to what extent is the performance of such 'duty' legally altered, amended or eliminated by a municipality's choice to withdraw services as opposed to continuing services while collecting sufficient revenues from the police jurisdiction to cover the incremental costs of covering the area with police and fire protection? In other words, does any existing 'duty' dissipate at the will of those council members entrusted to govern the affairs of the City or does such a 'duty' arise by operation of law requiring the City to perform the 'duty' for the benefit of those located within the police jurisdiction?"
(Emphasis original).
This Court has not addressed a case where a city has chosen to collect business license fees and sales tax in exchange for providing police and fire protection, and has then withdrawn such services over the objection of the *Page 1160 
residents and owners of businesses in the police jurisdiction. Rather, the case law in this area has developed through the numerous challenges made by businesses located in the police jurisdictions of municipalities, which contested the legality of the city's assessment of license taxes or other revenue measures. Although not directly on point, that case law is at least instructive to our analysis in this case.
In 1978, the United States Supreme Court addressed the relationship between a municipality and the businesses and residents located within the municipality's police jurisdiction, in Holt Civic Club v. City of Tuscaloosa,439 U.S. 60, 99 S.Ct. 383, 58 L.Ed.2d 292 (1978). In Holt CivicClub, an unincorporated civic association and certain residents of Holt, a small, rural unincorporated community on the outskirts of Tuscaloosa, brought a statewide class action to challenge the constitutionality of Alabama statutes that subjected the community to Tuscaloosa's police and sanitary regulation, to the criminal jurisdiction of the city's court, and to the city's power to license businesses, trades, and professions, but that did so without providing those persons an opportunity to participate in the political processes of the city. The Court held valid Alabama's statutes allowing municipalities to exercise a certain amount of power over their police jurisdictions; it explained:
 "Unincorporated communities like Holt dot the rim of most major population centers in Alabama and elsewhere, and state legislatures have a legitimate interest in seeing that this substantial segment of the population does not go without basic municipal services such as police, fire and health protection. Established cities are experienced in the delivery of such services, and the incremental cost of extending the city's responsibility in these areas to surrounding environs may be substantially less than the expense of establishing wholly new service organizations in each community."
Holt Civic Club, 439 U.S. at 74, 99 S.Ct. at 392.
Holt Civic Club followed several opinions of this Court that had upheld certain regulatory ordinances as a proper exercise of the police power and as applicable to the municipality's police jurisdiction. See Standard Chemical Oil Co. v. City ofTroy, 201 Ala. 89, 77 So. 383 (1917), and Walden v. City ofMontgomery, 214 Ala. 409, 108 So. 231 (1926). Soon after those two cases there followed Alabama cases indicating that the amount of tax levied upon a particular business located within the police jurisdiction "must reflect the reasonable compensation for the expense of municipal supervision over the particular business." Ex parte City of Leeds, 473 So.2d 1060,1061 (Ala. 1985). See also Alabama Power Co. v. City of CarbonHill, 234 Ala. 489, 175 So. 289 (1937), and Hawkins v. City ofPrichard, 249 Ala. 234, 30 So.2d 659 (1947).
In 1989 this Court expanded the notion of taxing the businesses and residents of the police jurisdiction in order to compensate the municipality for providing certain services. InState Department of Revenue v. Reynolds Metals Co.,541 So.2d 524 (Ala. 1988), this Court held that a municipality may collect reasonable expenses from within the police jurisdiction, regardless of the individual benefit to each business. Reynolds Metals provides a close look at the historical development of the concept of allowing municipalities to tax residents and businesses in its police jurisdiction in exchange for providing police and fire protection within that police jurisdiction. In Reynolds Metals, this Court stated, "A municipality owes the residents of, and businesses located in, its police jurisdiction, the duty 'to provide for the safety, preserve the health, promote the prosperity, and improve the morals, order, comfort, and convenience' of those residents and businesses." 541 So.2d at 531.
The Court further explained the relationship of a municipality and its police jurisdiction:
 "The municipality owes a business within its police jurisdiction the duty to provide fire protection as well as police protection of its physical plant. Accidents, fires, crimes, and other hazards requiring the services of city government do not occur on such a regular basis that they can be measured or predicted as to each individual *Page 1161 
business. But in the world as it now is, they do happen; and the municipality must be prepared, with personnel and equipment, to respond to these calamities when they do occur."
Id. While it might seem that Reynolds Metals potentially answers the question at hand, Reynolds Metals addressed only the relationship between the business license tax imposed in the police jurisdiction and the cost of the services being rendered there. The municipality in Reynolds Metals did not challenge whether it owed the residents within its police jurisdiction a "duty" to provide such services. Therefore, when the Court held in Reynolds Metals that a duty existed, it held that a city that accepted the responsibility to provide the service was entitled to collect taxes for the reasonable value of the service.
In all cases before today, the municipality was attempting to establish a relationship with the police jurisdiction by providing health and safety services while being compensated through a fair taxing system. The reasons for establishing such a relationship lie within the long-established public policy that the State has a significant interest in promoting the health and safety of the large number of people residing or conducting business outside the limits of incorporated municipalities and that the State has a significant interest in promoting the growth and development of these areas. Moreover, the State correctly recognizes that without certain protections and rules within police jurisdictions, the welfare of those within the corporate limits of the municipality would suffer.
In the present case, Prattville seeks to terminate this relationship. The primary focus of Prattville's argument is that all the statutes granting cities the power to govern police jurisdictions are "enabling acts" that do not establish a statutory "duty" to provide police and fire protection services to the police jurisdictions.
According to Prattville, a city can elect what services it will provide and can tax businesses and residents in the police jurisdiction at an amount that does not exceed the reasonable cost of those services. Therefore, Prattville maintains, a "duty" arises only as a result of the activity that is undertaken by the city. Prattville further argues that, based on its calculations, the cost of providing fire protection to the police jurisdiction far exceeds the amount it is allowed to tax within the police jurisdiction. Therefore, Prattville argues, it has the choice to continue or to terminate such services.
Joyner argues first that Prattville has a duty to provide police and fire protection. Moreover, Joyner argues that Prattville accepted this duty by collecting revenues sufficient to cover the cost of providing both police and fire protection. Therefore, he argues, Prattville should not be allowed to withdraw the fire protection. As previously stated, pursuant toReynolds Metals, supra, a municipality can lawfully tax the businesses or residents of the police jurisdiction in an amount estimated to be reasonably necessary to compensate the municipality for the cost of providing such services. Joyner maintains that he pays license fees for operating a business in the police jurisdiction and that in the operation of his business he collects and remits sales tax — both in exchange for the services of police and fire protection. Because Prattville was already taxing in its police jurisdiction at the maximum rate allowed by Alabama law, which is 1/2 the tax rate applied within its corporate limits, Joyner maintains that Prattville must provide both police and fire protection. In the alternative, Joyner argues that regardless of the lack of explicit statutory authority creating this duty, once a city chooses to create this relationship between the municipality and the police jurisdiction, the City has a duty to continue it. Joyner bases his argument on the theory of reasonable reliance. Joyner argues that, based on this theory, Prattville should be estopped from terminating its fire protection service to the police jurisdiction. Although it is not clear how and when this "duty" arises, and whether the "duty" can be terminated, we conclude that the argument of reasonable reliance, based on the circumstances of this case, is meritorious, and we find it dispositive in this case.
In Alford v. City of Gadsden, 349 So.2d 1132 (Ala. 1977), this Court explained *Page 1162 
that "[t]he doctrine of estoppel is rarely applied against a municipal corporation, but it may be applied in a proper case."Id. at 1135, citing City of Montgomery v. Weldon, 280 Ala. 463,195 So.2d 110 (1967); Powell v. City of Birmingham, 258 Ala. 159, 61 So.2d 11 (1952); Brown v. Tuskegee Light Power Co.,232 Ala. 361, 168 So. 159 (1936). In City of Guntersville v.Alred, 495 So.2d 566, 568 (Ala. 1986), this Court stated that "[t]he doctrine of estoppel may apply against a municipal corporation when justice and fair play demand it." See alsoAlabama Farm Bureau Mutual Casualty Insurance Co. v. Board ofAdjustment, 470 So.2d 1234 (Ala. 1985).
Other jurisdictions have also considered reasonable reliance as an appropriate basis for enforcing a duty on the part of the municipality. See, e.g., Helman v. Warren County, 111 A.D.2d 560,489 N.Y.S.2d 430 (1985) (holding that because a municipality should realize that its actions would lead other parties to reasonably rely on its services, liability flows from the harm resulting from a plaintiff's reliance more so than from the assumption of the duty itself); City of SanAntonio v. State ex rel. Criner, 270 S.W.2d 460 (Tex. 1954) (holding that a city could not detach property from a municipality where the city dweller had become accustomed to, and had relied on, city services and privileges, such as water, sewer, and garbage services, schools, and fire and police protection, because the dweller is entitled to reasonable safeguards against destruction of these advantages); Cracraftv. City of St. Louis Park, 279 N.W.2d 801 (Minn. 1979) (holding that if the plaintiff reasonably relied upon specific actions or representations by a municipality and that reliance caused him to forgo other alternatives, then the reliance tends to impose a duty of care).
Prattville suggests that Joyner had no legal advice that legitimized any reliance he may have had on the continuation of the fire protection service. That suggestion, however, is not based on the appropriate analysis for determining "reasonable reliance" under the facts of this case. Rather, whether the reliance was reasonable is determined by whether it was reasonable for Joyner, as the owner of a business located in the Prattville police jurisdiction, to rely on the continuation of fire protection provided by Prattville because that service had been provided for many years.
Fire Chief Archie Plyler testified that Prattville's fire department had been servicing the police jurisdiction for over 22 years. There was evidence that the Prattville Fire Department was one of the most successful and efficient in the state. Joyner presented evidence at the preliminary injunction hearing that the cost of his insurance would drastically increase if he no longer received fire protection from Prattville. An insurance agent testified that without Prattville fire protection services, the police jurisdiction would fall into the highest of 10 risk categories, and that that fact would result in insurers' charging businesses and residents of the police jurisdiction the highest insurance premiums allowed. For example, in regards to Joyner, this result is partially due to the fact that the nearest volunteer fire department is located 8 to 10 miles from Joyner's business in the police jurisdiction.
The fire department requires land developers building houses in the police jurisdiction to obtain approval for their subdivisions and to install fire hydrants in those subdivisions. Prattville's argument implies that Prattville would maintain a regulatory relationship with the builders in the police jurisdiction, without providing the beneficial service of fire protection.
As explained earlier, Joyner testified that he paid a business license fee and collected sales tax, which he remitted to the city, and that the amount he paid for a license was 1/2 the amount one would pay for a license to operate a business inside the municipal limits. This amount is the maximum license fee allowed for collecting revenues within the police jurisdictions. Ala. Code 1975, § 11-51-91. If the ordinance had become effective, Joyner was to continue paying this maximum amount, even though the city would no longer have been providing the fire protection. Joyner testified that when he built his business in the police jurisdiction five years earlier, he had expected to pay business license fees and to collect sales tax for Prattville. *Page 1163 
However, he said he also understood that in return Prattville would provide police and fire protection.
We agree with the trial court that Joyner's reliance on continuing city fire protection was reasonable under the facts of this case. After 22 years of providing fire protection and collecting revenues for that protection, Prattville may not arbitrarily terminate this service. Based on the evidence presented at the hearing, we conclude that Prattville's relationship with the businesses and residents in the police jurisdiction extended beyond the collection of revenue. If Prattville stops providing fire protection to the police jurisdiction now, there will be a drastic effect on businesses and residents of that area. Prattville must continue to provide fire protection to the police jurisdiction, because Prattvillechose to collect revenue from the businesses and residents of the police jurisdiction in order to finance those services, and because Prattville created and maintained an ongoing relationship with the police jurisdiction in regard to those services. More importantly, the businesses and residents of the police jurisdiction reasonably relied on the continuation of that relationship.
Although the sole basis for estopping Prattville from terminating fire protection services to its police jurisdiction is the reasonable reliance by residents and business owners that those services would continue, it is relevant to address the rationale provided by Prattville for attempting to terminate the fire protection. Prattville maintains that, based on its calculations, the cost of providing fire protection to its police jurisdiction exceeded the revenue collected. In its calculations, Prattville divided its yearly fire department budget of $1,410,850 by the total number of fire calls answered, which was 3,690, in order to determine the cost per call. According to this calculation, the cost per call was $382.34. Prattville multiplied this figure by the number of calls received from the police jurisdiction to determine the total cost of providing fire protection to that area. The calculation showed that $296,761 was spent on fire services for the police jurisdiction, while revenues collected from the police jurisdiction were $222,006. Prattville argues that, based on these calculations, its decision to terminate fire protection is warranted. This argument is flawed in several respects.
First, Prattville's accounting method does not distinguish between fixed and variable costs. When calculating the cost, Prattville does not show that many of the expenses are "fixed," meaning that the expenses would exist as a result of providing fire protection within the corporate limits regardless of whether it provided the fire protection to the police jurisdiction. An accountant's testimony at the hearing explained the effect of this omission:
 "A: I thought that the method used was overbroad and included costs that weren't necessarily attributable to the additional services.
 "Q: In other words, were sound accounting principles used in arriving at the figure that the City proposes or propounds as being the cost of providing these services to people in the PJ [police jurisdiction]?
"A: No.
 "Q: Now, could you tell us what specifics that they may have violated?
 "A: Well, they did not separate the cost as — in evaluating the cost of additional services, you would separate the fixed costs and the variable costs. Certain costs are fixed regardless of the number of calls that are made.
 "Q: For instance, what would be an example of fixed costs?
 "A: The cost of fire stations, the cost of fire trucks, the normal staff that you would have to have on as personnel. Those are fixed costs. Regardless of whether they have one call or a hundred calls, they are going to have to have a certain number of those expenditures at all times. This cost that they have calculated takes in those fixed costs and calculates a cost per call. It does not provide that these extra calls would only cost those variable expenses."
When a municipality calculates the cost of providing services to the police jurisdiction, the "incremental" cost of extending these services should be used for the calculations. It is not logical to assess the cost of providing a service by using expenses that *Page 1164 
would exist even if the municipality did not service the police jurisdiction. As stated above, in Holt Civic Club, supra, the United States Supreme Court stated that "[e]stablished cities are experienced in the delivery of such services, and theincremental cost of extending the city's responsibility in these areas to surrounding environs may be substantially less than the expense of establishing wholly new service organizations in each community." Holt Civic Club,439 U.S. at 74, 99 S.Ct. at 392 (emphasis added). Based on the evidence presented at the hearings, it appears that Prattville's accounting method calculates the cost of providing fire protection in the police jurisdiction as if that service was being provided by a wholly new service organization. This is not the case. Such an accounting method yields an exaggerated cost allocation to the police jurisdiction services. The accurate treatment of the cost should first consider Prattville's fixed capital expenditures and all costs associated with providing fire protection within the corporate limits. Then, Prattville should determine the costs associated with extending that fire protection to the police jurisdiction.
Second, the record indicates that in its calculations Prattville included calls for emergency ambulance service in the total number of calls for fire service. The inclusion of ambulance calls distorts the calculations that Prattville relied upon in deciding to terminate fire protection service in the police jurisdiction. Fire Chief Plyler testified that there were more ambulance calls than fire calls each year. In short, this method caused the number of total fire calls from the police jurisdiction, as reflected in Prattville's calculations, to be considerably increased, and it caused the assessment of the total cost for servicing the police jurisdiction to be thereby inflated.
Third, Fire Chief Plyler testified that the fire department responded to fire calls within the corporate limits in a manner different from that in which it responds to fire calls in the police jurisdiction. He also explained that because of the difference it was more expensive to respond to a fire call within the corporate limits than to one in the police jurisdiction. However, the accounting method used by Prattville allocates the cost of a fire call by treating all calls as similar, in or out of the corporate limits. Therefore, the assessment of the total cost of servicing the police jurisdiction is further distorted by Prattville's calculations.
Fourth, the mayor of Prattville testified that Union Camp Corporation's plant, which is located within the police jurisdiction, contributes $70,000 to $75,000 each year to the city in lieu of paying taxes. However, Prattville has not included this money as part of the revenues collected from its police jurisdiction. The mayor's testimony provides no acceptable justification for this omission. If Union Camp contributes a flat fee to Prattville each year in lieu of taxes, then that fee is analogous to the taxes and fees paid by businesses and residents in the police jurisdiction. Therefore, the $70,000 to $75,000 contribution from Union Camp should have been included in the revenues collected from the police jurisdiction by Prattville.
When all these are taken into account in determining the cost of providing fire protection to Prattville's police jurisdiction, it becomes clear that Prattville's rationale for terminating that service is without merit.
The injunction requiring Prattville to continue providing fire protection to the area within its police jurisdiction is affirmed.
AFFIRMED.
SHORES, HOUSTON, KENNEDY, and BUTTS, JJ., concur.
MADDOX and COOK, JJ., dissent.
[1] For purposes of economy and convenience, the term "police jurisdiction" is used in this opinion to mean that area between the corporate limits and the limit of the municipality's police jurisdiction, unless otherwise specified.
[2] Although the ordinance terminates only fire protection, the parties have argued the issue whether a municipality has a duty to provide police and fire protection to businesses and residents located within its police jurisdiction. Therefore, we address that broader issue in this opinion.