This is the second time this case has been before this Court. It presents this time, as it did the first time, the issue whether a municipality, here the City of Prattville, can terminate fire protection services to residents and businesses located within its police jurisdiction. See, City of Prattvillev. Joyner, 661 So.2d 1158 (Ala. 1995) (hereinafter referred to as Joyner I).
Most of the basic facts are stated in Joyner I, but we state a few of those facts again for a better understanding of the legal issue presented.
On October 19, 1993, the Prattville City Council passed an ordinance that purported to withdraw fire protection from Prattville's police jurisdiction, the initial ordinance providing for an effective date of January 1, 1994; the date was later extended to May 1, 1994. On April 29, 1994, just before the ordinance was to become effective, Leon Joyner, the owner of a business located within the Prattville police jurisdiction, filed a class action in which he sought declaratory relief and an order restraining the City from terminating the fire protection in the police jurisdiction on the ground that the City's action was "arbitrary and capricious, null and void, and unconstitutional." On April 30, 1994, the trial judge temporarily restrained Prattville from terminating fire protection, and on May 15, 1994, after a hearing on a request to enter preliminary relief, he entered a preliminary injunction enjoining "the City of Prattville, its Mayor and members of its Council, agents and employees" from "withdrawing, eliminating and/or terminating police and fireprotection from the business and individual residents who are located and/or residing within the three mile radius of the city known as and statutorily defined as the policejurisdiction" (emphasis in original). The City appealed; this Court affirmed.
In affirming, this Court cited Alford v. City of Gadsden,349 So.2d 1132 (Ala. 1977), stating that
 " '[t]he doctrine of estoppel is rarely applied against a municipal corporation, but it may be applied in a proper case.' Id. at 1135, citing City of Montgomery v. Weldon, 280 Ala. 463, 195 So.2d 110 (1967); Powell v. City of Birmingham, 258 Ala. 159, 61 So.2d 11 (1952); Brown v. Tuskegee Light Power Co., 232 Ala. 361, 168 So. 159 (1936). In City of Guntersville v. Alred, 495 So.2d 566, 568
(Ala. 1986), this Court stated that '[t]he doctrine of estoppel *Page 124 
may apply against a municipal corporation when justice and fair play demand it.' See also Alabama Farm Bureau Mutual Casualty Insurance Co. v. Board of Adjustment, 470 So.2d 1234
(Ala.[Civ.App.]1985)."
661 So.2d at 1161-62. Nevertheless, this Court held that the doctrine could be applied in that case, saying, among other things, the following:
 "We agree with the trial court that Joyner's reliance on continuing city fire protection was reasonable under the facts of this case. After 22 years of providing fire protection and collecting revenues for that protection, Prattville may not arbitrarily terminate this service. Based on the evidence presented at the hearing, we conclude that Prattville's relationship with the businesses and residents in the police jurisdiction extended beyond the collection of revenue. If Prattville stops providing fire protection to the police jurisdiction now, there will be a drastic effect on businesses and residents of that area. Prattville must continue to provide fire protection to the police jurisdiction, because Prattville chose to collect revenue from the businesses and residents of the police jurisdiction in order to finance those services, and because Prattville created and maintained an ongoing relationship with the police jurisdiction in regard to those services. More importantly, the businesses and residents of the police jurisdiction reasonably relied on the continuation of that relationship.
661 So.2d at 1163 (emphasis original).
In Joyner I, the Court also found that [o]ther jurisdictions [had] also considered reasonable reliance as an appropriate basis for enforcing a duty on the part of the municipality," citing cases. 661 So.2d at 1162.
After this Court rendered its decision, the parties made several additional filings, in which Joyner asked that the injunction be made permanent and the City asked that the cause be dismissed because of Joyner's failure to serve a copy of the pleadings on the attorney general. On August 11, 1995, Joyner served a notice of the pendency of the proceeding on the attorney general, attaching copies of the complaint and amendments to it. Joyner then filed a motion for summary judgment on the basis of the preliminary injunction order andJoyner I. The original trial judge recused and the case was assigned to another judge.[1]
The newly assigned trial judge, without holding a hearing, granted Joyner's request for a permanent injunction and denied each of the requests by the City to dismiss for the court's failure to require the joinder of the Cities of Montgomery and Millbrook, whose police jurisdictions overlap, in part, with Prattville's.
The City also raises the issue whether the trial court erred in certifying this action as a class action; the City contends that the requirements of Ala.R.Civ.P. 23(a) have not been satisfied. The City of Prattville also raises the issue whether the trial court erred in failing to require the joinder of the City of Millbrook and the City of Montgomery under Ala.R.Civ.P. 19(a).
 I.
We first consider the City's argument that Joyner I conflicts with the preexisting fundamental principles of Alabama municipal law. The City cites in support of its argument the case of City of Leeds v. Town of Moody, 294 Ala. 496, 501,319 So.2d 242, 246 (1975), where this Court stated, "Municipalities are mere instrumentalities of the state possessing only such powers as may have been delegated to them by the legislature." The City contends that in City of Leeds this Court, in referring to a municipality's power with respect to its police jurisdiction, held that such power is "legislative power
delegated [to it] by the legislature," which the *Page 125 
municipality cannot "by any provision or terms in a contract delegate or barter away." Id. The City also cites as authority for its position Karagan v. City of Mobile, 420 So.2d 57
(Ala. 1982), in which this Court held that in the absence of fraud, a municipality's decision of a discretionary nature is presumed legal and correct; and that, unless it is constitutionally proscribed, or otherwise prohibited by law, such a decision, being a legislative act, is judicially reviewable only on grounds of arbitrariness and capriciousness, to be tested by the "fairly debatable" standard. The City further argues that in Williams v. City of Tuscumbia,426 So.2d 824 (Ala. 1983), and Ziegler v. City of Millbrook,514 So.2d 1275 (Ala. 1987), this Court held that "there is no legislative duty imposed upon a municipality to maintain a fire department." 426 So.2d at 825. Last, the City says that forcing it to provide fire protection to the police jurisdiction will place a substantial financial burden on the City.[2]
The City also argues that the principles announced inJoyner I create ambiguities in the law and that it will be difficult to implement those principles. The City mentions such things as annexation of additional territory, or revising the City limits by deannexation, and says that this Court did not define "how and when this 'duty' arises and whether the 'duty' can be terminated."
On this appeal, we have been favored with amicus briefs from the attorney general and the Alabama League of Municipalities. The attorney general argues that "[a] governmental entity cannot be precluded from making prospective changes in its policy of providing governmental services based on a single claim of reliance on the preexisting policy for providing such services." The attorney general concludes his brief with these propositions:
 "1. If expenditures for police jurisdiction services equal or exceed business license revenues received from the police jurisdiction, as required by Ala. Code [1975,] § 11-51-91, the determination of what services, if any, are to be provided from time to time in its police jurisdiction by a municipality is a matter within the legislative discretion of the governing body of the municipality. The exercise of that discretion is entitled to judicial deference absent a clear abuse of that discretion.
 "2. Residents and property owners in a municipal police jurisdiction acquire no vested entitlement to the general provision of any municipal services or the general provision of any level of municipal services by reliance, estoppel, or otherwise.
 "3. Municipal services being provided in a municipal police jurisdiction may be prospectively altered in scope or terminated, after appropriate prior public notice.
The Alabama League of Municipalities argues that "[t]he Code of Alabama places no duty on a municipality to provide service to the police jurisdiction and the theories of reasonable reliance or equitable estoppel should [not] prohibit a municipality from withdrawing service from the police jurisdiction."
It is apparent that this Court decided Joyner I on the principles of equitable estoppel and that it did not foresee some of the questions that could arise from the application of that doctrine. Although the City and the attorney general appear to recognize that if expenditures for police jurisdiction services equal or exceed business license revenues received from the police jurisdiction then the City must furnish services, each argues that the determination of what services are provided is a matter within the legislative discretion of the governing body of the city and that that determination is entitled to judicial deference absent a clear abuse of that discretion.
Although the City and the attorney general recognize that the doctrine of equitable estoppel can be applied against a city, both say that it should not have been applied In Joyner I.
After further review of that principle, we agree.
In State Highway Dep't v. Headrick Outdoor Advertising, Inc.,594 So.2d 1202, 1204-05 *Page 126 
(Ala. 1992), this Court discussed the doctrine:
 "Equitable estoppel is to be applied against a governmentality only with extreme caution or under exceptional circumstances. First Nat'l Bank of Montgomery v. United States, 176 F. Supp. 768
(M.D.Ala. 1959), aff'd, 285 F.2d 123 (5th Cir. 1961); Ex parte Fields, 432 So.2d 1290 (Ala. 1983).
 " 'Under the settled law, equitable estoppel . . . must be predicated upon the conduct, language, or the silence of the party against whom it is sought to be invoked. Said conduct, language, or silence must amount to the representation or concealment of a material fact or facts. The representation must be as to the facts and not as to the law. . . .'
" '. . . .
 "(Emphasis added [in Headrick Outdoor Advertising]). 176 F. Supp. at 772, quoting Automobile Club of Michigan v. Commissioner, 353 U.S. 180, 182, 77 S.Ct. 707, 709, 1 L.Ed.2d 746 . . . (1957)."
In view of the additional arguments that have been presented on this appeal, and in view of the implications of the Joyner I
decision that we did not envision on original deliverance, we believe we should revisit Joyner I.[3]
The general rule of law stating the right of a city to tax residents in the police jurisdiction and the duties that flow from that right are stated in Holt Civic Club v. City ofTuscaloosa, 439 U.S. 60, 99 S.Ct. 383, 58 L.Ed.2d 292 (1978), where the Supreme Court of the United States held that a municipality can impose taxes and license fees on residents and businesses in the police jurisdiction, without giving those residents a right to vote, if the amount collected is reasonably related to the costs of the services furnished. This Court, in Joyner I, using the principle of Holt Civic Club
applied its own accounting formula and determined that the City's accounting procedures were "flawed" because they divided the total fire budget by the total number of fire calls made. The City, the attorney general, and the Alabama League of Municipalities all argue that the accounting method used by the City was a fair way of apportioning the cost of fire protection and that it would appear to treat all subscribers equally, whether they lived in the corporate limits or in the police jurisdiction. Especially troubling to the City and the amici was the holding by this Court in Joyner I that the residents of the police jurisdiction do not have to share in the "fixed" costs of the fire department, which the Court defined as "the expenses [that] would exist as a result of providing fire protection within the corporate limits regardless of whether [the city] provided the fire protection to the police jurisdiction." 661 So.2d at 1163. We believe that holding improperly applies the principles of Holt Civic Club, and, insofar as it is inconsistent with the principles set out inState Department of Revenue v. Reynolds Metals Co.,541 So.2d 524 (Ala. 1989), it should not be followed. The principle set out in Reynolds Metals Co. is as follows:
 "A municipality must estimate the amount reasonably necessary to provide for the protection of the lives, health, and property of businesses and residents, and for the maintenance of good order and the preservation of public morals within its entire police jurisdiction. The municipality may then, by a properly adopted ordinance or resolution, set a license fee for businesses within its police jurisdiction, but outside its city limits, so that the total receipts from all such licenses do not exceed the amounts estimated to be reasonably *Page 127 
necessary to provide these services to the police jurisdiction. No license fee charged to any business within the police jurisdiction, but outside the city limits, shall be more than one-half of the license fee charged to a similar business within the city limits. Such ordinances shall be presumed to be reasonable, and the burden shall be upon the business challenging the license fee charged to it to prove that such license fee is unreasonable or that the ordinance was illegally adopted or is violative of the statutory or fundamental law of the United States or of the State of Alabama."
541 So.2d at 532. This formula is similar to the one used by the Supreme Court of the United States in Holt Civic Club v.City of Tuscaloosa in determining whether a tax or license fee could be constitutionally imposed on citizens without giving them the right to vote.
The City raises other issues, such as: (1) whether the trial court erred by issuing a permanent injunction without holding an evidentiary hearing, even though such a hearing was contemplated by the trial court's original order that was appealed to this Court in Joyner I (the City argues that there are genuine issues of fact as to whether there was sufficient reliance to justify the relief ordered by the trial judge); (2) whether the trial court erred in certifying a class action under Rule 23(a) (the City argues that the requirements of Rule 23(a) have not been met); and (3) whether the trial court erred by failing to require the joinder of the Cities of Montgomery and Millbrook, whose police jurisdictions overlap, in part, with Prattville's. In view of our holding, we think it not necessary to address these other issues.
The judgment is reversed and the cause is remanded for further proceedings consistent with this opinion.
REVERSED AND REMANDED.
HOOPER, C.J., and SHORES and COOK, JJ., concur.
HOUSTON, J., concurs specially.
SEE, J., concurs in the result.
BUTTS, J., dissents.
[1] On August 18, 1995, the trial judge filed a disclosure stating that his mother was a member of the plaintiff class certified by him in the class action order, and he specified a 10-day period to allow the parties to file a written agreement for remittal of disqualification. An attorney for the plaintiffs filed a "notice of withdrawal" from the "Residential Class" notifying the court that the judge's mother had purportedly "opted out" of the class certified in the class action order. On August 31, 1995, the trial judge, noting that all parties had not filed a remittal of disqualification, transferred the case to another circuit judge.
[2] The City contends that Joyner I requires it to continue fire protection to residents of the police jurisdiction despite the fact that this continued protection would cause the City to run an annual deficit of over $70,000.
[3] In State Department of Revenue v. Reynolds Metals Co.,541 So.2d 524, 526 (Ala. 1988), we quoted Justice Shores's statement in Jackson v. City of Florence, 294 Ala. 592, 598,320 So.2d 68, 73 (1975):
 "As strongly as we believe in the stability of the law, we also recognize that there is merit, if not honor, in admitting prior mistakes and correcting them."
In Joyner I, Justices Maddox and Cook, dissenting, raised the question of what happens when the revenue from license fees and taxes that a municipality is authorized by the legislature to collect is insufficient to compensate the municipality for the municipal regulation and service the municipality is furnishing in the police jurisdiction. The City and the attorney general both argue that a City has no duty to furnish services to the police jurisdiction if furnishing such services would cause a deficit.