WRIGHT, Retired Appellate Judge.
BellSouth Telecommunications, Inc., d/b/a South Central Bell Telephone Company, filed *1097 a complaint in the Jefferson County Circuit Court against the City of Hoover Communications District (hereinafter referred to as “HCD”), the Shelby County Emergency Communications District (hereinafter referred to as “SCECD”), and the Districts’ individual board members. BellSouth alleged that the City of Hoover, Alabama, annexed areas of Shelby County, Alabama, into its city boundaries and that before May 5, 1994, the annexed areas were transferred, by agreement, from SCECD to HCD. BellSouth also alleged that SCECD informed BellSouth by a letter dated May 5, 1994, that it would no longer agree to allow any part of Shelby County to be converted to another communication district. In June 1994 the City of Hoover annexed South Pointe subdivision, located in Shelby County. BellSouth alleged that HCD demanded the database information provided under tariff and the revenues collected from the residents of South Pointe. SCECD refused to release the information or revenue to HCD. BellSouth requested the trial court to determine which communication district was entitled to database information provided under tariff and to revenues collected from the residents of South Pointe subdivision.
HCD answered and cross-claimed, requesting the trial court to declare that it was the proper recipient for 911 telephone calls in the City of Hoover and that it was entitled to the tariffs collected from city residents. Thereafter, the North Shelby Fire and Emergency Medical District (NSFEMD) filed a motion to intervene, which the trial court granted. NSFEMD answered, counterclaiming against BellSouth for the revenues collected within its district and cross-claiming against HCD.
Following oral proceedings, the trial court entered a judgment, finding that SCECD had a legal right to retain South Pointe in its district and to receive the revenues collected from South Pointe residents. The trial court denied HCD and NSCEMD’s cross-claims and NSCEMD’s counterclaim.
HCD appeals, contending that the Emergency Telephone Service Act, §§ 11-98-1 through -7, Ala.Code 1975, is silent regarding a municipality’s annexation of property serviced by another communication district and that the trial court’s decision failed to effectuate the intent of the legislature. This case is before this court pursuant to § 12-2-7(6), Ala.Code 1975.
The legislature authorized municipalities and counties to create Emergency 911 communication districts “composed of the territory lying wholly within the municipality or of any part or all of the territory lying wholly within the county,” § 11-98-2, Ala.Code 1975, to “shorten the time required for a citizen to request and receive emergency aid.” § 11-98-3. The creating authority of the communication district may appoint a seven-member board of commissioners to operate the district. § 11-98-4. Pursuant to § 11 — 98—5(a)(1), a district’s board may levy the following:
“an emergency telephone service charge in an amount not to exceed five percent of the maximum tariff rate charged by any service supplier in the district, except that in counties with populations of less than 25,-000 as determined by the most recent population census, the board of commissioners may ... levy an emergency telephone service charge in an amount not to exceed two dollars ($2).... Any service charge shall have uniform application and shall be imposed throughout the entire district, to the greatest extent possible, in conformity with availability of such service in any area of the district.”
The record reveals the' following facts: The City of Hoover created HCD, and Shelby County created SCECD to service their citizens. The streets in each communication district are mapped; the map is merged into the district’s “Mechanized Street Address Guide” (MSAG). Each district is responsible for maintaining a MSAG. The MSAG is “a series of all the addresses of streets and ranges within the jurisdiction” and is used to dispatch police, fire trucks, and medical providers within the district. The district then assigns each address an “Emergency Service Number” (ESN); the ESN determines the specific fire, police, and medical responder for each address. The MSAG and the ESN are then integrated into a database maintained by BellSouth. When a 911 call comes *1098 in, BellSouth’s database provides “screen information which the 911 jurisdiction would use to respond.” A street and its corresponding ESNs cannot be in more than one district’s MSAG.
Prior to May 5, 1994, HCD and SCECD had an agreement that SCECD would release areas annexed by the City of Hoover to be included in HCD’s MSAG. On May 5, 1994, SCECD informed BellSouth in a letter that it would no longer agree to allow any part of Shelby County to be converted to another communication district. In June 1994 the City of Hoover annexed South Pointe. Thereafter, HCD requested SCECD to release South Pointe to enable HCD to transfer South Pointe into HCD’s MSAG; SCECD refused HCD’s request.
The map of the streets in South Pointe and the corresponding ESNs are located in SCECD’s MSAG. When a resident of South Pointe calls 911, the call is routed to SCECD, which then transfers the call to HCD, which provides emergency services. SCECD receives the emergency service charge revenues collected from South Pointe residents. The record reveals evidence that the dispute over South Pointe and the transfer of calls has caused confusion and some delay in the provision of emergency services.
Although the legislature did contemplate cooperation between communication districts, § ll-98-5(g), the Emergency Telephone Service Act is silent regarding which communication district has jurisdiction of an area that is located in one district but is subsequently annexed into another district. Section ll-98-5(g) provides:
“With the agreement of the service supplier and the creating authority, two or more communication districts, or cities, or counties, or a city and a county in another communication district may agree to cooperate, to the extent practicable, to provide funding and service to their respective areas, and a single board of commissioners of not more than seven members may be appointed to conduct the affairs of the entities involved.”
When construing a statute, this court must ascertain and give effect to the legislative intent expressed in the statute, “which may be gleaned from the language used, the reason and necessity for the act, and the purpose sought to be obtained.” State ex rel. Whetstone v. Baldwin County, 686 So.2d 220, 223 (Ala.1996) (citation omitted). The reason and necessity for, and purpose of, the Emergency Telephone Service Act are stated in § 11-98-3, which provides:
“It has been shown to be in the public interest to shorten the time required for a citizen to request and receive emergency aid. The provision of a single, primary three-digit emergency number through which emergency services can be quickly and efficiently obtained will provide significant contribution to law enforcement and other public service efforts by simplifying the notification of public service personnel. Such a simplified means of procuring emergency services will result in the saving of life, a reduction in the destruction of property, quicker apprehension of criminals, and ultimately the saving of money. Establishment of a uniform emergency number is a matter of concern and interest to all citizens. It is the purpose of this chapter to establish the number 911 as the primary emergency telephone number for use in communications districts in municipalities or counties as herein provided.”
Moreover, HCD and the City of Hoover have a duty to provide the same services to South Pointe residents as they provide to all other Hoover residents. See City of Prattville v. Joyner, 698 So.2d 122 (Ala. 1997); Williams v. City of Tuscumbia, 426 So.2d 824 (Ala.1983). In this case, HCD and the City of Hoover are providing emergency services to South Pointe residents without receiving the emergency service charge revenues generated by those residents, and SCECD is receiving revenues without providing emergency services to South Pointe residents.
The legislature’s purpose in enacting the Emergency Telephone Service Act was to shorten the time between a request for, and the receipt of, emergency aid and to provide for the funding of a three-digit emergency number. Based upon our review of §§ 11-98-1 through -7, we conclude that the *1099 legislature did not intend for one communication district to provide emergency services to an area without receiving revenues while another communication district received revenues from the same area without providing emergency services. This relationship does not serve the benevolent purpose of the statute. § 11-98-3. Therefore, we hold that the Emergency Telephone Service Act does not permit a communication district to retain an area and its revenues which are annexed into^ a municipality and its communication district. Consequently, the trial court erred in entering a judgment in favor of SCECD.
The judgment of the trial court is reversed and this cause is remanded to the trial court for entry of a judgment consistent with this opinion.
The foregoing opinion was prepared by Retired Appellate Judge L. Charles Wright while serving on active duty status as a judge of this court under the provisions of § 12-18-10(e), Ala.Code 1975.
REVERSED AND REMANDED WITH INSTRUCTIONS.
ROBERTSON, P.J., and YATES, MONROE, and THOMPSON, JJ., concur.
CRAWLEY, J., dissents.