The City of Foley (the City) sought to enforce nonconforming-use provisions of its zoning ordinance to prevent the replacement of mobile homes in a nonconforming mobile home park. The circuit court entered a summary judgment in favor of the mobile home park owners. The City appealed. The issues before this Court are (1) whether the City's zoning ordinance may prevent the replacement of mobile homes in mobile home parks that are preexisting nonconforming uses, and (2) if the ordinance bars such replacement, whether the City should be estopped from enforcing the ordinance.
Green Acres trailer park, a 14-lot mobile home park in Foley, has been in continuous operation since approximately 1955. The defendants Kenneth McLeod and Jackie McLeod purchased Green Acres in 1982 and have since been responsible for operating the mobile home park. While they have owned Green Acres, the McLeods have rented lots to tenants owning their own mobile homes; the McLeods have also purchased mobile homes and placed them for rent on other lots at Green Acres.
In 1967, the City adopted a zoning ordinance that placed the Green Acres property into a single-family residential zone. In 1987, the City adopted its current zoning ordinance, which placed the Green Acres property into a high-density single-family residential zone. Although these zoning ordinances would generally prohibit the operation of a mobile home park in single-family residential areas, they have allowed the continued operation of Green Acres as a preexisting nonconforming use.
In the summer of 1994, the McLeods purchased six mobile homes to replace existing rental units at Green Acres. The McLeods moved the new mobile homes to Green Acres, placed them on lots there, and prepared them for use as rental units. However, in August 1994 the City sent the McLeods a letter demanding that they remove the new mobile homes from Green Acres within 10 days. In the letter, the City took the position that because the McLeods' mobile home park was a nonconforming use, their locating different or additional mobile homes at Green Acres would violate the City's zoning ordinance. The McLeods declined to remove the mobile homes, and one year later the City initiated this action in the Baldwin County Circuit Court, seeking an injunction and declaratory judgment.
In its complaint, the City contended that its zoning ordinance prohibits the replacement of mobile homes within a mobile home park if the replacement would extend the life of a nonconforming use. Accordingly, the City asked the circuit court to issue an injunction prohibiting the McLeods from replacing mobile homes at Green Acres. The City also asked the circuit court to issue a declaratory judgment setting out the City's rights and duties regarding nonconforming uses under the 1987 zoning ordinance.
In their answer, the McLeods asserted that they had a right to continue operating Green Acres as a nonconforming use. They also contended that the City should be estopped from complaining of the replacement of mobile homes at Green Acres because the City had permitted similar replacements at various times since the enactment of the current zoning ordinance in 1987. Finally, the McLeods counterclaimed, alleging that the City's enforcement of the zoning ordinance amounted to inverse condemnation and an unconstitutional taking of their property.
The City moved for a summary judgment on its request for injunctive and declaratory relief and moved to dismiss the McLeods' counterclaim. The McLeods moved for a partial summary judgment on the City's request for relief. The circuit court denied the City's motion, but granted the McLeods' motion for partial summary judgment. Pursuant to Rule 54(b), Ala. R. Civ. P., the circuit court entered a final judgment for the McLeods on the City's claims.[1] *Page 473 
This Court must first determine whether the City's 1987 zoning ordinance prohibits the replacement of existing mobile homes at a nonconforming mobile home park such as Green Acres. To make this determination, we turn to the language of the zoning ordinance itself. The nonconforming-uses provisions pertinent to this case state:
"6.2 Non-Conforming Uses of Land and Buildings
 "Within the districts established by this Ordinance or amendments that may be later adopted, there exist lots, structures, uses of land and structures, and characteristics of use which were lawful before the Ordinance was passed or amended, but which would be prohibited, regulated or restricted under the terms of this Ordinance or future amendment. It is the intent of this Ordinance to permit these non-conformities to continue until they are removed, but not to encourage their survival. It is further the intent of this Ordinance that non-conformities shall not be enlarged upon, expanded, nor be used as grounds for adding other structures or uses prohibited elsewhere in the same district.
 "6.2.1 Continuance. A lawful non-conforming use existing at the effective date of this Ordinance may be continued, except as hereafter provided, although such use does not conform with the provisions of this Ordinance.
 "6.2.2 Restoration to Safe Condition. Nothing in this Ordinance shall prevent the restoration of any building or structure to a safe or sanitary condition when required by the proper authorities.
 "6.2.3 Restoration After Damages, No non-conforming building or structure which has been damaged by fire or other causes to the extent of more than 50 percent of its current replacement value at the time of such damage shall be rebuilt or restored except in conformity with the provisions of this Ordinance. If a non-conforming building is damaged less than 50 percent of its current replacement value it may be rebuilt or restored and used as before the damage, provided that such rebuilding or restoration is completed within 12 months of the date of such damage."
The terms of the City's zoning ordinance certainly disfavor nonconforming uses. While the provisions of the ordinance do not require the immediate eradication of nonconforming uses, they do support the gradual abatement of nonconforming uses through time and attrition. In keeping with the City's policy against perpetuating nonconforming uses, the zoning ordinance prohibits the enlarging or expanding of such uses and prevents the repair or restoration of nonconformities that are damaged beyond 50 percent of their replacement value. The only apparent exception to these prohibitions is when safety or sanitation is concerned, and even then the restoration of a nonconforming building must be at the direction of proper authorities.
This general disfavor toward nonconforming uses has been recognized by this Court in Board of Zoning Adjustment v.Boykin, 265 Ala. 504, 92 So.2d 906 (1957). In Boykin a property owner sought to substantially remodel a nonconforming structure. In deciding that a building permit authorizing the remodeling was not properly issued under the applicable zoning ordinance, this Court quoted Moore v. Pettus, 260 Ala. 616,627, 71 So.2d 814, 823-24 (1954), describing the intent of nonconforming-use provisions in zoning ordinances:
 " 'The intention of zoning laws as regards a use of nonconforming property is to restrict rather than extend it. . . . The whole purpose and spirit of the zoning ordinance would be defeated if an owner is permitted to substitute permanent brick walls for rotted exterior walls, put in new flooring in place of rotted flooring, put on a new roof and build a new addition, as this would extend or prolong indefinitely the life of the nonconforming building.' "
265 Ala. at 509, 92 So.2d at 909.
The McLeods have gone far beyond merely remodeling or repairing a nonconforming structure. Rather, they purchased six mobile homes to completely replace existing rental units at Green Acres. The ultimate effect of this replacement could only be to expand the useful life of the McLeods' *Page 474 
mobile home park. If the McLeods continue to replace their mobile homes as they deteriorate, then the operation of Green Acres could continue in perpetuity. Such an expansion violates § 6.2 of the City's zoning ordinance, which states that "non-conformities shall not be enlarged upon, expanded, nor be used as grounds for adding other structures or uses prohibited elsewhere in the same district." Moreover, extending the life of a nonconforming use contravenes the ordinance's overall policy against perpetuating such a use. Therefore, we hold that the City may generally enforce the zoning ordinance to prevent the McLeods from replacing mobile homes at Green Acres.
The McLeods contend that, even if the terms of the City's zoning ordinance would prevent their replacing mobile homes at Green Acres, the City should be estopped from enforcing the ordinance because the City has allowed similar replacements at various times since the ordinance was adopted in 1987. To support this contention, the McLeods presented evidence to show that numerous mobile homes were moved into and out of Green Acres between 1987 and 1994. They also point out that the City presented no evidence indicating that it ever objected to the moving and replacing of mobile homes at Green Acres until August 1994. In further support of their estoppel argument, the McLeods stated, in their response to the City's interrogatories, that they informed the City's building inspector of their plan to purchase the six replacement mobile homes and that he expressed no objection to their plan. Again, the City presented no evidence to refute this statement.
In City of Prattville v. Joyner, 661 So.2d 1158 (Ala. 1995) (Joyner I), this Court affirmed an injunction estopping the City of Prattville from denying fire protection services to residents and businesses within its police jurisdiction. The Court recited these general principles regarding the application of the doctrine of estoppel against municipal corporations:
 "In Alford v. City of Gadsden, 349 So.2d 1132
(Ala. 1977), this Court explained that '[t]he doctrine of estoppel is rarely applied against a municipal corporation, but it may be applied in a proper case.' Id. at 1135, citing City of Montgomery v. Weldon, 280 Ala. 463, 195 So.2d 110
(1967); Powell v. City of Birmingham, 258 Ala. 159, 61 So.2d 11 (1952); Brown v. Tuskegee Light Power Co., 232 Ala. 361, 168 So. 159 (1936). In City of Guntersville v. Alred, 495 So.2d 566, 568 (Ala. 1986), this Court stated that '[I]he doctrine of estoppel may apply against a municipal corporation when justice and fair play demand it.' See also Alabama Farm Bureau Mutual Casualty Insurance Co. v. Board of Adjustment, 470 So.2d 1234
(Ala.Civ.App. 1985)."
Joyner I, 661 So.2d at 1161-62.
This Court recently revisited the Joyner I decision in Cityof Prattville v. Joyner, 698 So.2d 122 (Ala. 1997) (Joyner II), and determined from the facts of that case that the City of Prattville should not have been estopped from denying fire protection services. However, Joyner II did not alter the general rule that, although estoppel is to be cautiously applied against a municipal corporation, it may nonetheless be applied when a municipality's conduct, language, or silence amounts to a representation or concealment of a material fact. See Joyner II, 698 So.2d at 126, quoting State HighwayDep't v. Headrick Outdoor Advertising, Inc., 594 So.2d 1202,1204-05 (Ala. 1992).
Thus, although the doctrine of estoppel is rarely applied against a municipal corporation, it may be applied in a proper case when justice and fair play demand it and where there has been a misrepresentation or concealment of material fact. In the present case, the evidence indicates that numerous mobile homes had been moved into and out of Green Acres over the years. Nonetheless, the City had declined to enforce the zoning ordinance against Green Acres after Green Acres became a nonconforming use in 1967. Even when the City objected in 1994, it objected only after the McLeods had already purchased the mobile homes and had prepared them for rental. Taken as a whole, these factors cause us to conclude that the City's continued acquiescence amounted to a misrepresentation of a material fact, namely that it would not enforce the zoning ordinance to prevent the McLeods from replacing *Page 475 
mobile homes at Green Acres. Moreover, it would be unjust and unfair at this point to allow the City to force the McLeods to remove the six mobile homes. Therefore, we hold that as to the installation of these six mobile homes the City is estopped from enforcing the zoning ordinance against the McLeods. On that basis, we affirm the summary judgment against the City.
Although we hold that the City is estopped in this case, we note that the City will not be forever barred from enforcing the zoning ordinance against the McLeods or against mobile home parks generally. While the City had long remained silent in the face of the perpetuation of Green Acres as a nonconforming use, the City's action in the present case indicates a departure from that acquiescence. Consequently, even though the McLeods may retain and use the six mobile homes that are the immediate subject of this case, the City is not estopped from taking prospective action to prevent future replacements, repairs, or similar activities that violate the zoning ordinance.
AFFIRMED.
HOOPER, C.J., and SHORES, HOUSTON, and KENNEDY, JJ., concur.
COOK and SEE, JJ., concur in the result.
MADDOX, J., dissents.
[1] Because the circuit court entered a final judgment only on the City's request for injunctive and declaratory relief, the McLeods' counterclaim is not before this Court. Therefore, we express no opinion on the merits of their argument that the City's actions constituted inverse condemnation and an unconstitutional taking of their property.