(113 So. 6)

**STATE ex rel. MARTIN v. CITY OF GADSDEN. (7 Div. 678.)**

Supreme Court of Alabama. March 31, 1927.

Rehearing Denied May 26, 1927.

1. **Municipal corporations** ⊜⇒29(4)—**City, annexing territory after abandonment by other city, and uninterruptedly exercising municipal functions for 15 years, will not be ousted of jurisdiction (Code 1923, § 1765; Acts 1890-91, p. 816, § 2).**

Where, after ordinance in attempted compliance with Acts 1890-91, p. 816, § 2, excluding territory from corporate limits, territory remained abandoned for 6 years and was thereafter annexed to another city, which for approximately 15 years exercised all powers and functions of municipal government therein, neither public interest nor private right will require that city be ousted of its jurisdiction in the premises, in that its jurisdiction, under Code 1923, § 1765, was justified by acquiescence or waiver.

2. **Estoppel** ⊜⇒62(2)—**That quo warranto to exclude territory from city was in name of state did not preclude defense of acquiescence in city's jurisdiction.**

That quo warranto, seeking to exclude city from exercising governmental functions over certain described territory, was brought in name of the state, does not preclude defendant from setting up acquiescence in its exercise of municipal functions thereover, on ground that as-

sumption of jurisdiction was based on wrong, and that, as against state, an acquiescence in wrong could not be predicated.

**3. Estoppel ⬅62(2)—Generally, laches or neglect of duty by government officers is no defense to suit to enforce public right or protect public interest.**

Generally, laches or neglect of duty on part of officers of government is no defense to a suit by it to enforce a public right or protect a public interest, since every one dealing with officer or agent of government must, at his peril, inquire into extent of power.

**4. Estoppel ⬅62(2)—State cannot be deprived of right to legislate by estoppel in pais.**

The state cannot, by the operation of any mere estoppel in pais, be deprived of its right to legislate.

**5. Estoppel ⬅62(2)—Claims against state cannot be created by estoppel.**

Claims cannot be created against the state by means of estoppel.

**6. Quo warranto ⬅22—Doctrine of waiver may be used as defense in quo warranto proceeding by state.**

In a quo warranto proceeding instituted by the state for its own peculiar purposes, doctrine of waiver operating to the same effect, as an estoppel in pais, may be appealed to and applied in defense.

**7. Estoppel ⬅52—Generally, estoppels in pais are available as well at law as in equity.**

Generally, estoppels in pais are available as well at law as in equity; the only estoppel available in equity and not at law being such as grow out of titles to land which are required to be in writing or depend on peculiar relations cognizable in equity only.

**8. Municipal corporations ⬅20—Presumptions are indulged in favor of legal existence of municipal corporations.**

Municipal corporations are important instrumentalities of government, and presumptions are to be indulged in favor of their legal existence.

**9. Municipal corporations ⬅29(4)—Territory inadvertently omitted from description of land excluded from city will be held part of city annexing abandoned territory.**

Where city in excluding territory inadvertently failed to exclude a certain portion constituting bed of creek, though it was wholly separated from any other part of territory, such particular territory will be held part of another city annexing such territory after its abandonment for 6 years and exercising municipal functions thereover for approximately 15 years.

Appeal from Circuit Court, Etowah County; Woodson J. Martin, Judge.

Quo warranto by the State of Alabama, on the relation of Jackson L. Martin, against the City of Gadsden. From a judgment of dismissal, relator appeals. Affirmed.

See, also, 214 Ala. 66, 106 So. 229.

Weatherly, Birch, McEwen & Hickman, and J. S. Franklin, all of Birmingham, for appellant.

The effort to repeal Ordinance 107 was by resolution; this cannot be done. Jones v. McAlpine, 64 Ala. 511. This ordinance became effective upon its passage by the council. Clark v. Uniontown, 4 Ala. App. 264, 58 So. 725. The council had no prerogative at a subsequent meeting to repeal or rescind the ordinance. Mayor, etc., v. Davis, 98 Ala. 629, 13 So. 331, 39 Am. St. Rep. 94. The state is the plaintiff in this case, and is not subject to the doctrine of estoppel. Derrick's Case, 117 Ala. 349, 23 So. 193; State v. Brewer, 64 Ala. 287; State v. Lashar, 71 Conn. 540, 42 A. 636, 44 L. R. A. 197. A municipality, in its governmental capacity, cannot be estopped. Mobile Co. v. Williams, 180 Ala. 639, 61 So. 963; 10 R. C. L. 704; 21 C. J. 1191. A municipality cannot lose its control over territory by nonuser. Butler v. Walker, 98 Ala. 358, 13 So. 261, 39 Am. St. Rep. 61. It can only be lost by legislative act or judicial decree. State v. Hutchins, 79 N. H. 132, 105 A. 519, 2 A. L. R. 1685; 22 R. C. L. 703; 21 C. J. 217. Laches, acquiescence, and estoppel are not grounds for upholding a void statute. U. S. v. Beebe, 127 U. S. 338, 8 S. Ct. 1083, 32 L. Ed. 121; Howard v. Bugbee, 24 How. 461, 16 L. Ed. 753. Acquiescence in an illegal act is not binding. Eufaula v. McNab, 67 Ala. 588, 42 Am. Rep. 118.

Joe F. Duke, Dortch, Allen & Dortch and Hood & Murphree, all of Gadsden, for appellee.

The ordinance of exclusion was adopted in accordance with the rules of procedure of the city council, became effective under those rules, and the territory in question became excluded from the limits of Alabama City. Acts 1890–91, pp. 816, 818; 19 R. C. L. 895; People v. Maxon, 139 Ill. 306, 28 N. E. 1074, 16 L. R. A. 178. Ordinance 107 was never adopted. Acts 1890–91, pp. 818, 820, 821. The annexation proceeding by the city of Gadsden was a literal compliance with the statute. Code 1907, § 1070 et seq. The city of Gadsden acquired title and right to control the territory by acquiescence on the part of Alabama City, the state, and the public generally. State v. Pell City, 157 Ala. 380, 47 So. 246; Gravlee v. Moore, 184 Ala. 131, 63 So. 557; Code 1923, §§ 1739, 1742; 13 L. R. A. (N. S.) 534; 1 McQuillin, 349; Michigan v. Wisconsin, 270 U. S. 295, 46 S. Ct. 290, 70 L. Ed. 595. The state is precluded from attacking the franchise of a city which has been permitted to exercise the functions of government for a long time, during which general acquiescence has existed. Young v. Village of Harris, 102 Minn. 340, 113 N. W. 887, 13 L. R. A. (N. S.) 533, 12 Ann. Cas. 260; State v. Des Moines, 96 Iowa, 521, 65 N. W.

⬅For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

818, 31 L. R. A. 186, 59 Am. St. Rep. 381; People v. Maxon, 139 Ill. 306, 28 N. E. 1074, 16 L. R. A. 178. In this case the state is only a nominal party, without interest in the controversy. State v. Atlanta Mutual Ins. Co., 200 Ala. 443, 76 So. 375; State v. U. S. Endowment, 140 Ala. 610, 37 So. 442, 103 Am. St. Rep. 60.

SAYRE, J. The city of Gadsden undertook in 1909 to annex certain territory which at a previous time had been included within the territorial limits of Alabama City. Appellant's petition for the writ of quo warranto alleges that in July, 1924, and continuously thereafter, defendant municipality, appellee in this case, "did usurp, intrude into, and unlawfully hold and exercise a franchise in and to" the described territory, and the prayer is that Gadsden be excluded from the exercise of governmental functions therein. After considering agreed facts, the trial court, by its judgment, established the right of Gadsden in the territory and dismissed the petition.

Prior to 1903 the territory in dispute had been a part of Alabama City. In that year an effort was made by that municipality to exclude this territory from its limits and the contest now under consideration may be considered as turning upon two questions of law and fact: (1) Was the territory in dispute excluded from the corporate limits of Alabama City in pursuance of law at the time of its annexation to the city of Gadsden? (2) If not, should the writ be denied because of the long acquiescence in the status brought about by its de facto inclusion in the city of Gadsden?

The question of acquiescence aside, it is conceded that, if this territory continued to be a part of Alabama City, the ordinance for its inclusion in Gadsden in the manner employed was without authority of law because the provision of section 1071 of the Code of 1907, then in effect (carried forward in modified form into the Code of 1923 as section 1765), was that no enlargement of its territory by a municipal corporation should embrace territory within the corporate limits of another municipality. In this connection it was shown that on May 23, 1903, it was ordained by the mayor and aldermen of Alabama City that certain described territory, the territory now in dispute, be excluded from the corporate limits of the city. However, December 3d of the same year, an ordinance was adopted which in terms repealed the ordinance of May 23d. This last ordinance, known as Ordinance No. 107, appears to have had the formal approval of the mayor. But the minutes of the municipal council of date January 6, 1908, show that on that date the "minutes of last meeting [were] approved with the exception of Ordinance No. 107 relating to the taking back of steel plant [the territory in dispute] into the corporate limits of Alabama City. This was rescinded in the following unanimous vote: 'Moved and carried to repeal Ordinance No. 107 passed December 3, 1907. Approved: R. A. Burns, Mayor.'"

Appellee's contention is that the action of the mayor and aldermen shown by the foregoing quotation from the minutes of the board of aldermen suffice to work a repeal of Ordinance No. 107, with result that the ordinance of May 23d, supra, remained in effect and the disputed territory remained without the corporate limits of Alabama City, so that in 1909 there stood no legal obstacle in the way of its inclusion in the city of Gadsden. Moreover, to the same effect, but, as it now appears to us, with less cogent reason, appellee also contends that Ordinance 107 was never in fact adopted. In the event either contention should be approved, appellant's application for the writ of quo warranto was properly refused.

It is clear enough that it was the purpose of the mayor and aldermen of Alabama City to exclude the disputed territory from the limits of that city, and it is agreed that, from and after the adoption of the ordinance of May 23, 1903, Alabama City has in no respect exercised any of the functions of municipal government in the territory in question, nor has it claimed or exercised any right in the premises, and that, since the adoption by the city of Gadsden of the ordinance of annexation, the two municipalities have entered into agreements concerning the attendance of children living within the territory upon the public schools of one or the other of the two, concerning water supply, sewage disposal, and other subjects of municipal concern, which said agreements proceeded all upon the theory and assumption that this territory had been lawfully incorporated into the city of Gadsden; but whether Ordinance 107 was adopted in strict compliance with the law of procedure prescribed or permitted by the charter of Alabama City (Acts 1890–91, p. 816, § 2), or whether, if adopted, the resolution of January 6, 1908, sufficed under the same law to repeal said ordinance, are questions which may now be pretermitted, since our opinion is that the decision of the case presented may well be rested upon the matter of acquiescence, as it is spoken of in the briefs. We have, however, stated the contentions made in respect to the ordinance of Alabama City for the reason that, in our opinion, the facts upon which those contentions rest shed an appreciable light on the question of acquiescence—waiver, to speak more accurately—to be now stated.

[1] Since the adoption of the ordinance of annexation the city of Gadsden has exercised all the powers and functions of municipal government in the territory in question. It has levied and collected taxes, and expended large sums in providing the necessities, comforts, and conveniences of urban life, to

that end has erected schoolhouses and maintained schools, constructed, and maintained waterworks and a sewage system, constructed, extended, and maintained streets, furnished protection against fire, furnished police protection and sanitary supervision, and its people have exercised political prerogatives as members of the municipality.

[2] Appellant, insisting that no proper or effectual legal steps were ever taken to exclude this area from the municipality of Alabama City, contends, therefore, that the assumption of jurisdiction by the city of Gadsden was based upon wrong, and that, as against the state of Alabama, in the name of which this proceeding was undertaken, an acquiescence in wrong cannot be predicated. The proceeding is in the name of the state, as every such proceeding must be—that necessity being a survival from the time when the writ here sought was a matter of prerogative—but it is not filed by the state or any of its officers thereunto authorized. Nor has Alabama City evinced an interest in this proceeding, though it would appear that, if relator's proceeding be successful, the territory in controversy will fall back into its municipal control, unless, indeed, the doctrine of estoppel by acquiescence would operate to a different effect. It appears in fact rather to be a proceeding to vindicate some supposed right of the relator, who alleges that he owns real property—and, we presume, is required to pay taxes—in the area in dispute. Relator was entitled so to proceed in the name of the state and he justifies his application for the writ on grounds affecting the prerogatives and the interest of the state. It will be so considered without conceding that appellant has shown a right to have the question litigated by means of his application for the extraordinary writ. In passing, we note that the Legislature thought it sufficiently guarded the public against an abuse of the process invoked—invoked for private ends—when it required security for costs (Code 1923, § 9933; Tuscaloosa Scientific Ass'n v. State ex rel. Murphy, 58 Ala. 54); that precaution, however, failing of observance in the present case.

[3-6] The state has an interest, of course, in having this territory properly allocated for the purposes of municipal government; but, aside from that very general interest, hardly more in the circumstances of this case than the state's interest that every mooted question of public authority should be correctly decided, it does not appear that any real interest of the state is involved. But, dealing with the question as one involving public interests, it will be conceded that, as a general rule, laches or neglect of duty on the part of officers of government—meaning in this case as viewed from appellant's standpoint, the failure of the municipal officers of Gadsden and Alabama City to insist that the territory in question be treated as part and parcel of

the latter municipality—is no defense to a suit by it to enforce a public right or protect a public interest. Utah Power Co. v. United States, 243 U. S. 409, 37 S. Ct. 387, 61 L. Ed. 791; State ex rel. Lott v. Brewer, 64 Ala. 298. The basis of the rule as thus announced is the principle that every one who deals with an officer or agent of the government must, at his peril, inquire into the extent of their power, and we have no doubt that principle was correctly applied in the cases just cited. It is unreservedly conceded that the state cannot, by the operation of any mere estoppel in pais, be deprived of its right to legislate. Nor can claims against the state be created by estoppel. Lott v. Brewer, supra. The writ in this case appears as matter of fact to have been invoked on behalf of property owners; but it is argued from the viewpoint of the interest of the state. The authorities are abundant to the effect that in a quo warranto proceeding instituted by the state for its own peculiar purposes the doctrine of waiver, operating to the same effect as an estoppel in pais, may be appealed to and applied in defense. Quoting from State ex rel. Douglas v. School District, 85 Minn. 230, 88 N. W. 751:

"In cases where the right of a corporation to assert its corporate existence has been questioned because of some defect or irregularity in the proceedings for organization, it has frequently been held that the doctrine of estoppel is applicable, where there have been acts on the part of the state which in terms amount to a waiver. The conduct of a state may be such as to constitute a declaration that a forfeiture of corporate rights will not be insisted upon, and that the right to declare such forfeiture is waived"—citing Attorney General v. Delaware, 27 N. J. Eq. 1; Commonwealth v. Bala, 153 Pa. 47, 25 A. 1105; Attorney General v. Petersburg, 28 N. C. 456; People v. President, 9 Wend. (N. Y.) 351; Commonwealth v. Andre's Heirs, 3 Pick. (Mass.) 224, which go far to sustain the quoted opinion.

In the same case it is said that a proceeding by information in the nature of quo warranto is a subject for the exercise of a sound judicial discretion, and it is proper for the court to consider all the circumstances, the position and motives of the relator, and the necessity and policy of allowing the remedy, citing People v. Schnepp, 179 Ill. 305, 53 N. E. 632; People v. Gartland, 75 Mich. 143, 42 N. W. 687. These principles were fully recognized by this court in State ex rel. Roberson v. Pell City, 157 Ala. 380, 47 So. 246, where the court held that it was vested with a discretion and might refuse a judgment of ouster, the interests of the public not requiring such judgment. In that case the court quoted from 2 Spelling, Extraordinary Relief, p. 1468, § 1803, and with distinct approval from State v. Leatherman, 38 Ark. 81, where it was held that the state may, by long acquiescence and continued recogni-

tion of a municipal corporation, through its officers, be precluded from an information to deprive it of its corporate life.

[7] It is suggested that equitable estoppel —that is, estoppel in pais—may not be allowed to operate in this proceeding at law; but that estoppels in pais are, in general, available as well at law as in equity, is the established doctrine of this court, the only estoppels available in equity, but not at law, being such as grow out of titles to land, which are required to be in writing, or depend upon peculiar relations cognizable in equity only. Wefel v. Stillman, 151 Ala. 249, 44 So. 203; 5 Mich. Dig. 711.

[8] Municipal corporations are important instrumentalities of government, and some presumptions are due to be indulged in favor of their legal existence. In the present case an effort was made by the municipal authorities of Alabama City to exclude the territory in dispute, which, it seems, was at that time of no particular value for municipal purposes, from the jurisdiction of that city. The field was abandoned for 6 years. Then the city of Gadsden, by proceedings regular in material respects—if the proceeding by which the territory was excluded from Alabama City were effectual to that end—incorporated this territory within its limits. From that time to the filing of the petition in this case, December, 1924, the city of Gadsden, no one dissenting, exercised governmental control over this territory, with the concurrence and approval of the municipal authorities of Alabama City, expending large sums of money in its improvement and in every customary way asserting its right and jurisdiction. The court is therefore of opinion that no public interest requires, nor, for that matter, does any private right demand, a judgment ousting the city of Gadsden of its jurisdiction in the premises.

[9] Much space in the brief is given to the proposition that Gadsden, by its proceeding, undertook to annex the bed of Black creek, whereas the bed of Black creek had never been excluded from Alabama City. According to the legislative charter of Alabama City, its eastern boundary for a short distance lay along the east bank of the creek. Acts 1890–91, p. 816. The ordinance of exclusion described land lying to the west of the creek, thus leaving the bed of the creek within Alabama City. But, if we understand the situation, Gadsden undertook to annex territory lying to the west of the creek, the east bank of which for a short distance was adopted by the legislative charter as the eastern boundary of Alabama City. If it be that the bed of Black creek was within the limits of Alabama City at the time of the adoption of the ordinance of exclusion, then between that time and the time of the ordinance of annexation to Gadsden the bed of that creek for such short distance was still in Alabama City, though wholly separated from every other part of its territory. Without denying the legal possibility of such a situation, we can attribute it only to confusion of terms of description and inadvertence; but, whether to be so accounted for or not, the waiver of which we have heretofore treated will suffice to dispose of the question of the annexation of that territory along with the rest.

Affirmed.

ANDERSON, C. J., and GARDNER and BOULDIN, JJ., concur.