BERT ALEXANDER *et al.*, Plaintiffs, v. CONSUMERS ILLINOIS WATER COMPANY, Defendant and Third-Party Plaintiff-Appellant (The Village of University Park, Defendant and Third-Party Defendant-Appellee).

Third District   Nos. 3—04—0118, 3—04—0164 cons.

Opinion filed July 11, 2005.

Stephen A. Rehfeldt (argued), of Mulherin, Rehfeldt & Varchetto, P.C., of Wheaton, for appellant.

Robert A. Dawczak (argued) and Howard Krauskopf, both of Myers, Miller & Krauskopf, and Walter S. Calhoun, both of Chicago, for appellee.

JUSTICE McDADE delivered the opinion of the court:

In this case from the circuit court of Will County, the defendant Consumers Illinois Water Company seeks contribution from the defendant Village of University Park (Village) for damages awarded to plaintiffs as a result of property damage caused by defective sewer lines. The court below denied the motion for contribution, finding that the Village owed no duty to the plaintiffs and was in any event protected by statutory immunity under the Local Governmental and Governmental Employees Tort Immunity Act (745 ILCS 10/1—101 *et seq.* (1998)) (Tort Immunity Act or Act). For the reasons that follow, we affirm.

BACKGROUND

The defendant Consumers Illinois Water Company (Consumers) is the owner and operator of water and sewer lines in the Village of University Park. Residents of the Village connect their houses to the sewer lines by means of a lateral line that runs from the house to the main sewer line. These lines are owned by the homeowners. The Village of University Park does not have an ownership interest in either the sewer system or the lateral lines.

The plaintiffs in the case are all homeowners on the 700 block of Union Drive in University Park. On June 6, 1997, the main sewer line

servicing the plaintiffs' homes became clogged, and sewer water backed up into the homes, causing significant damage. It was later determined that the sewer backup was caused by debris created by one of the homeowners cleaning out his or her lateral line.

According to Stefan Saller, a Consumers employee, a backup had also occurred in 1995, one block away from the incident that led to the present suit. During discovery, a manager for the Village also admitted that he had received between 10 and 20 complaints about clogged sewer mains during his tenure with the Village.

Saller testified that after the sewer backup in 1995, he requested that the Village pass an ordinance requiring Village residents to get a permit before cleaning out lateral sewer lines. The Village did not adopt the requested ordinance.

In 1997, the Village passed an ordinance requiring that backflow water valves and overhead sewers be installed on all newly constructed residential units. However, the ordinance did not require the installation of those devices on buildings constructed prior to the passage of the ordinance, although it did offer financial assistance to homeowners who wished to install the equipment. According to Consumers, the installation of either a backflow valve or an overhead sewer will prevent sewage from backing up into a home as a result of a clogged sewer line.

The plaintiffs filed a complaint against the Village and Consumers seeking damages for the sewer backup. Consumers filed a counterclaim against the Village seeking contribution. The plaintiffs and Consumers alleged that the Village was aware of the possibility that backups could occur and damage the property of plaintiffs, but took no action to rectify the situation, either through appointing an official to inspect the lateral lines or by passing legislation requiring the installation of backup valves and overhead sewers. The Village filed motions for summary judgment on the complaint filed by the plaintiffs and Consumers' counterclaim. In the motions, the Village argued that it did not owe the plaintiffs a duty of care and argued that it was immune under the Tort Immunity Act. In its response to the summary judgment motion, Consumers alleged that the Village had knowledge of the danger faced by the plaintiffs, and therefore owed a "special duty" to the plaintiffs to protect them from harm, and argued that the Village was not protected by the Tort Immunity Act.

The trial court granted summary judgment in favor of the Village and against the plaintiffs and Consumers, finding that because the Village did not own, manage, or maintain the sewer system, it did not owe the plaintiffs a common law duty, and it also found that even if the Village owed a duty, it was immune from suit under the Tort Immunity Act. Consumers now appeals.

## ANALYSIS

Consumers appeals from summary judgment granted in favor of the third-party defendant Village of University Park and argues that the trial court incorrectly determined that the Village did not owe plaintiffs a duty and challenges the ruling that the Village is immune from suit under the Tort Immunity Act.

Summary judgment is appropriate when the pleadings, depositions, admissions and affidavits on file, construed strictly against the moving party and liberally in favor of the nonmovant, show that there is no genuine issue of material fact and that the movant is entitled to judgment as a matter of law. 735 ILCS 5/2—1005 (West 2004). We will review the grant of summary judgment *de novo. Green v. International Insurance Co.*, 238 Ill. App. 3d 929, 934, 605 N.E.2d 1125, 1128 (1992).

Consumers argues that it was error for the trial court to fail to find that the Village owed a duty of care to the plaintiffs with respect to the maintenance of the sewer lines. The plaintiffs and Consumers, as counterclaimant, alleged that the Village was aware of the recurrence of sewage backups in the area and was aware that sewer backups could be caused by debris removed from a homeowner's lateral line. Despite this, according to Consumers, the Village did nothing to require that homeowners cleaning out their lateral lines notify either the Village or itself, and did nothing to require existing homes to install backflow water valves to protect against sewage backups.

■ In determining whether the Village owed a duty to plaintiffs, we will consider (1) the foreseeability that the defendant's conduct would result in injury to another, (2) the likelihood of injury, (3) the magnitude of the burden of guarding against the injury, and (4) the consequences of placing the burden on the defendant. *Curatola v. Village of Niles*, 154 Ill. 2d 201, 214, 608 N.E.2d 882, 888 (1993).

■ We believe it is clear the Village did not owe a duty to protect against sewage backflow caused by a clogged sewer line. The counterplaintiff's argument fails the first element of the test. It was simply not foreseeable that the conduct of the Village could have resulted in the alleged injury. The Village does not own the main or lateral lines of the sewer system and has no maintenance responsibilities. It was not in a position to know that the cleaning of lateral lines posed a threat of clogging the main sewer line, resulting in a backup. Additionally, the likelihood was low that injury would occur due to the Village's failure to require the installation of backflow devices or notice by homeowners to Consumers of the cleaning out of lateral lines. Despite the fact that there had been prior instances where sewer backups had occurred, it is not clear that the backups were a result of lateral line cleanings or would have been mitigated by the presence of

backflow valves. It could also be expected that imposing a duty on the Village to mandate the installation of backflow valves and to require notification prior to lateral line cleaning would raise administrative costs. Finally, it is possible that placing the duty with the Village may decrease the likelihood of sewer backups. However, it is not clear to what extent this is true. Given the balance of the factors, the Village should not be burdened with the necessity of preventing sewer backups through legislation requiring backflow valves or notice of lateral line cleanings.

■ Even assuming, however, that the Village owed a general duty to the public to prevent the sewer backups, the "public duty rule" would bar legal liability. Under the public duty rule, a public entity may not be "held liable for [its] failure to provide adequate governmental services." *Harinek v. 161 North Clark Street Ltd. Partnership*, 181 Ill. 2d 335, 345, 692 N.E.2d 1177, 1183 (1998). An exception to the public duty rule exists when a public entity owes a special duty to the plaintiff different from the duty owed to the general public. *Lakeside Condominium "C" Ass'n v. Frediani Developers, Inc.*, 135 Ill. App. 3d 972, 973, 482 N.E.2d 665, 666 (1985). The "special duty exception" applies when a public entity steps outside its governmental function and acts in a private capacity or develops a relationship with the plaintiff. *Lakeside*, 135 Ill. App. 3d at 973, 482 N.E.2d at 666. It is clear, however, that in this case the Village did not act in a private capacity, since it does not own or operate the sewer system. It also has not developed a relationship with any consumers of sewer services, since the system was run by the counterplaintiff, a private company.

■ The special duty exception requires a finding that (1) the municipality was uniquely aware of the particular danger or risk to which the plaintiff is exposed, (2) there are allegations of specific acts or omissions on the part of the municipality, (3) the specific acts or omissions are either affirmative or willful in nature, and (4) the injury occurred while the plaintiff was under the direct and immediate control of the employees and agents of the municipality. *Bell v. Village of Midlothian*, 90 Ill. App. 3d 967, 970, 414 N.E.2d 104, 106 (1980).

■ The facts do not support an exception to the public duty rule. The Village was not uniquely aware of the risk of a sewage backup. As operator of the sewer system, it is likely that Consumers had a better appreciation of the risk of a backup caused by debris from lateral line cleanings. The plaintiffs did not allege willful or affirmative conduct. Finally, the alleged injuries did not occur while the plaintiffs were under the direct and immediate control of employees or agents of the municipality. Since these elements were not satisfied, Consumers cannot show a special duty owed by the Village to the plaintiffs.

■ Finally, the defendant argues that it is immune from liability under the Local Governmental and Governmental Employees Tort Immunity Act. Section 2—103 of the Act states that "[a] local public entity is not liable for an injury caused by adopting or failing to adopt an enactment or by failing to enforce any law." 745 ILCS 10/2—103 (West 2004). Additionally, section 2—105 of the Act states:

"A local public entity is not liable for injury caused by its failure to make an inspection, or by reason of making an inadequate or negligent inspection, of any property, other than its own, to determine whether the property complies with or violates any enactment or contains or constitutes a hazard to health or safety." 745 ILCS 10/2—105 (West 2004).

Consumers argues that the Village has waived its reliance on the Tort Immunity Act because it did not file its reliance on the Act as an affirmative defense in its answer to Consumer's counterclaim. Also, Consumers argues that the Tort Immunity Act, while protecting a municipality from direct liability, does not shield it from a claim for contribution under the contribution act.

■ With respect to the issue of waiver, an affirmative defense is not waived, despite the fact that it was not raised in an answer to a complaint, if the defense is subsequently raised without objection in a motion for summary judgment. *Florsheim v. Traveler's Indemnity Co. of Illinois*, 75 Ill. App. 3d 298, 303, 393 N.E.2d 1223, 1228 (1979). In this case, the Village raised its tort immunity defense in its motion for summary judgment, and Consumers did not object but, rather, argued the merits in its response. We will therefore consider the argument.

The Tort Immunity Act provides immunity not only in cases of direct liability, but also protects governmental bodies from liability under contribution claims. *Lietsch v. Allen*, 173 Ill. App. 3d 516, 521, 527 N.E.2d 978, 981 (1988). See also *Buell v. Oakland Fire Protection District Board*, 237 Ill. App. 3d 940, 943-44, 605 N.E.2d 618, 620-21 (1992); *McShane v. Chicago Investment Corp.*, 190 Ill. App. 3d 357 (1989); *Martin v. Lion Uniform Co.*, 180 Ill. App. 3d 955, 960, 536 N.E.2d 736, 739 (1989).

■ The provisions of the Tort Immunity Act on which the Village relies clearly immunize it from liability. It cannot be held liable for either its failure to pass legislation or for a failure to inspect. These are the claims raised against Village. Because the Village cannot be held liable for the failure to enact legislation or to inspect under sections 2—103 and 2—105 of the Tort Immunity Act, summary judgment in favor of the Village was proper. The order below is affirmed.

## CONCLUSION

The Village of University Park does not owe the plaintiffs a duty

of care to pass the legislation alleged by the defendant Consumers to be required. Additionally, the action was barred by the Tort Immunity Act, a defense that had not been waived by the Village. Summary judgment in favor of the defendant was appropriate and the order is affirmed.

Affirmed.

SLATER, P.J., and O'BRIEN, J., concur.