3 So.3d 186 (2008)
CITY OF HUNTSVILLE
v.
STOVE HOUSE 5, INC.
1070353.
Supreme Court of Alabama.
May 30, 2008.
Rehearing Denied August 15, 2008.
*187 Michael L. Fees, C. Gregory Burgess, and Nori D. Horton of Fees & Burgess, P.C., Huntsville, fro appellant.
Gary P. Wolfe of Wolfe, Jones, Boswell, Wolfe, Hancock & Daniel, L.L.C., Huntsville, for appellee.
Kenneth Smith, gen. counsel, Alabama League of Municipalitites, Montgomery, amicus curiae Alabama League of Municipalities, in support of the appellant.
LYONS, Justice.
The City of Huntsville ("Huntsville"), the plaintiff in a declaratory-judgment action, appeals from a summary judgment in *188 favor of Stove House 5, Inc. ("Stove House"). We affirm.

I. Facts and Procedural History

Huntsville experienced significant economic growth and geographic expansion in the 1950s. In 1956 the Alabama Legislature passed Act No. 86, the stated purpose of which was "[t]o alter, extend, re-arrange, and re-define the boundaries and corporate limits of the City of Huntsville, annexing certain territory to the city, and making provision for the assessment and collection of municipal taxes." Act No. 86, Ala. Acts 1956 (Second Special Session). This act annexed approximately 14,000 acres into Huntsville's corporate limits, but also expressly excluded six tracts of land where industries had originally located outside the corporate limits.
These six tracts of unincorporated land became known as "tax islands" because they are now surrounded by land that is within Huntsville's corporate limits. Although no tax revenue for Huntsville is generated from the tax islands because the land is situated outside Huntsville's corporate limits, Huntsville has provided fire and police protection and sanitary sewer service to the tax islands since 1956. Stove House asserts that in 1956 Huntsville and the owners of land situated on the tax islands agreed that the tax islands would receive city services in exchange for the owners not opposing the passage of Act No. 86.
From 1956 until 1991, the tax islands were outside the corporate limits of Huntsville, but within the police jurisdiction of Huntsville pursuant to § 11-40-10(a), Ala. Code 1975 ("The police jurisdiction in cities having 6,000 or more inhabitants shall cover all adjoining territory within three miles of the corporate limits...."). In 1991 voters ratified Amendment No. 531 to the Alabama Constitution of 1901 (now included in Local Amendments, Madison County § 9 (Off.Recomp.)), which effectively excluded the tax islands from the police jurisdiction of Huntsville. Amendment No. 531 provides: "In Madison county, no police jurisdiction nor any planning or zoning regulation of a municipality located wholly or partially within Madison county shall extend beyond the corporate limits of the municipality."
On January 27, 2004, Huntsville sued the owners of land situated on the tax islands known as Martin Stove, Lincoln Mill, Lowe Mill, and Merrimack Mill ("the landowners"),[1] seeking a judgment declaring that Huntsville has no duty under Alabama law to continue providing city services, namely fire and police protection and sanitary sewer services, to these landowners. Huntsville further sought a declaration that because, it says, it has no duty to provide such city services to the landowners, it could lawfully cease providing such services to the landowners. Huntsville named the following individuals and entities as defendants: Reliance Agents, Inc.; John H. Ebaugh; Marguerite W. Ebaugh; Robin Ebaugh; Lowe Mill Properties, LLC; Storage Equities; PS Partners VI, Ltd.; and Stove House.
Huntsville voluntary dismissed the action as it related to Storage Equities and PS Partners VI, Ltd., after Huntsville annexed land on the tax island known as Merrimack Mill. Huntsville and the Ebaughs jointly moved in the trial court for the entry of a consent judgment evidencing their settlement, which provided, in part, that Huntsville would annex land on the tax island known as Lincoln Mill. *189 The trial court granted the motion and entered the consent judgment. Huntsville and Lowe Mill Properties jointly stipulated to the dismissal of the action as it related to Lowe Mill Properties, and the trial court dismissed the action as to Lowe Mill Properties without prejudice. Reliance Agents, Inc., and Stove House were the remaining defendants.
Stove House and Huntsville each moved for a summary judgment. Stove House asserted two alternative bases for its summary-judgment motion. Stove House first contended that the doctrine of laches[2] bars Huntsville's declaratory-judgment action because, it argued, Huntsville's lengthy delay in filing the action has prejudiced it. Stove House specifically argued that because more than 50 years had passed since Huntsville agreed to provide city services to the landowners it was impossible to identify witnesses who had knowledge of the creation of the tax islands in 1956 and of any agreements between Huntsville and the landowners.
As an alternative basis for summary judgment, Stove House contended that Huntsville had agreed in 1956 to provide city services to the tax islands and that that agreement still exists. Stove House asserted that Huntsville had admitted the existence of an agreement between Huntsville and the landowners and that Huntsville's course of performance over the last 50 years evidences its intent to provide city services to the landowners. Stove House then stated, in its brief in support of its motion for a summary judgment:
"To further bolster this contract, the law of Alabama has established that `a municipal corporation may be held liable on an implied contract' whether implied from corporate acts or implied by law, especially `to prevent the municipality from enriching itself by accepting and retaining benefits without paying just compensation therefor.' Bethune v. City of Mountain Brook, [293 Ala. 89,] 300 So.2d 350 (Ala.1974), also citing Greeson Mfg. Co. v. County Bd. of Ed., [217 Ala. 565,] 117 So. 163 (Ala.1928)[.] [Huntsville] was greatly enriched by annexation of 21½ square miles without vote of those affected. The benefits to [Huntsville] continue to this day, as does [its] obligation under the Agreement."
(Emphasis added.)
In its brief in opposition to Stove House's summary-judgment motion, Huntsville contended that all Stove House's arguments "fall flat" because, it said, there is no formal contract between Huntsville and the landowners. Huntsville contended that controlling caselaw plainly states that a municipality has no duty to *190 provide municipal services outside its corporate boundaries in the absence of a formal contract. See City of Attalla v. Dean Sausage, Inc., 889 So.2d 559 (Ala.Civ.App. 2003). Huntsville further noted that § 11-47-5, Ala.Code 1975, provides that "[c]ontracts entered into by a municipality shall be in writing" and that there is no evidence indicating that a written contract between Huntsville and the landowners exists. Similarly, in its summary-judgment motion Huntsville argued that it lacks any duty under Alabama law to continue providing city services to the tax islands and that, therefore, Huntsville can lawfully cease providing city services to the tax islands.
The trial court denied Huntsville's motion for a summary judgment, granted Stove House's motion for a summary judgment, and entered a summary judgment in favor of Stove House. The trial court in its order did not provide any rationale for its decision. Huntsville then filed a motion to amend, alter, or vacate the judgment pursuant to Rule 59(e), Ala. R. Civ. P., and a motion to strike certain evidentiary material submitted by Stove House in opposition to Huntsville's motion for a summary judgment. The trial court denied both motions.
Huntsville and Reliance Agents, Inc., then jointly stipulated to the dismissal of Huntsville's claims against Reliance Agents, Inc. The trial court dismissed the action as it related to Reliance Agents without prejudice. Huntsville then appealed to this Court. Stove House is the only remaining defendant and the only appellee.

II. Standard of Review

The standard by which this Court will review a ruling on a motion for summary judgment is well established:
"`The principles of law applicable to a motion for summary judgment are well settled. To grant such a motion, the trial court must determine that the evidence does not create a genuine issue of material fact and that the movant is entitled to a judgment as a matter of law. Rule 56(c)(3), Ala. R. Civ. P. When the movant makes a prima facie showing that those two conditions are satisfied, the burden shifts to the nonmovant to present "substantial evidence" creating a genuine issue of material fact. Bass v. SouthTrust Bank of Baldwin County, 538 So.2d 794, 797-98 (Ala.1989); § 12-21-12(d)[,] Ala.Code 1975. Evidence is "substantial" if it is of "such weight and quality that fair-minded persons in the exercise of impartial judgment can reasonably infer the existence of the fact sought to be proved." West v. Founders Life Assur. Co. of Florida, 547 So.2d 870, 871 (Ala.1989).
"`In our review of a summary judgment, we apply the same standard as the trial court. Ex parte Lumpkin, 702 So.2d 462, 465 (Ala.1997). Our review is subject to the caveat that we must review the record in a light most favorable to the nonmovant and must resolve all reasonable doubts against the movant. Hanners v. Balfour Guthrie, Inc., 564 So.2d 412 (Ala.1990).'"
Payton v. Monsanto Co., 801 So.2d 829, 832-33 (Ala.2001) (quoting Ex parte Alfa Mut. Gen. Ins. Co., 742 So.2d 182, 184 (Ala.1999)).

III. Analysis

Huntsville argues that the trial court improperly entered a summary judgment for Stove House because, it contends, settled Alabama law provides that when a municipality does not collect taxes from the owners of property outside the municipality's corporate limits, the municipality is not required to provide city services to these owners. Huntsville relies heavily on the Court of Civil Appeals' holding in *191 Dean Sausage, that "any municipal services being provided in a police jurisdiction without a formal contract or agreement `"may be prospectively altered in scope or terminated, after appropriate prior public notice."'" 889 So.2d at 570 (quoting City of Prattville v. Joyner, 698 So.2d 122, 125 (Ala.1997) ("Joyner") quoting in turn the amicus brief of the attorney general) (emphasis added). Simply, Huntsville contends that it has no duty to provide city services to nonresident landowners such as Stove House because, it says, there is no evidence indicating that Huntsville agreed, pursuant to a formal contract, to provide these services.
Huntsville further contends that absent a formal contract between it and the landowners, neither equitable estoppel nor any other equitable principles prevent it from terminating city services to the tax islands. First, Huntsville notes that this Court has repeatedly held that "`[e]quitable estoppel is to be applied against a governmentality only with extreme caution or under exceptional circumstances.'" Joyner, 698 So.2d at 126 (quoting State Highway Dep't v. Headrick Outdoor Adver., Inc., 594 So.2d 1202, 1204 (Ala.1992)). Huntsville further notes that in Dean Sausage the Court of Civil Appeals construed the holding in Joyner to be based on the rationale that "residents in a municipal police jurisdiction acquire no vested interest or entitlement to the continued provision of municipal services by reliance or estoppel." 889 So.2d at 570. In accordance with Joyner and Dean Sausage, Huntsville contends that it is not estopped from terminating city services to the landowners because, as non residents of Huntsville, the landowners do not have a vested interest in the provision of the city services.
Huntsville also argues that the doctrine of laches is inapplicable to this case because, it says, Stove House cannot show that it was disadvantaged, harmed, or prejudiced by the passage of time. Huntsville relies on Touchstone v. Peterson, 443 So.2d 1219, 1226 (Ala.1983), in which this Court stated:
"To be affected by laches, the delay must have been with notice of the existence of the right, resulting in disadvantage, harm, or prejudice to another, or have operated to bring about changes in conditions and circumstances so that there can no longer be a safe determination of the controversy."
Huntsville further contends that the doctrine of laches is irrelevant because, it says, there is no evidence indicating that a formal contract between Huntsville and the landowners exists and under the authority of Dean Sausage, absent a formal contract, it may terminate city services to the tax islands. In other words, Huntsville asserts that even if it had brought this action 50 years earlier, there still would not have been any evidence of a formal contract between Huntsville and the landowners. Lastly, Huntsville notes that the underlying concept behind the doctrine of laches and equitable estoppel are the same  that one party's delay in asserting rights cannot be allowed to prejudice another party  and because Dean Sausage held that equitable estoppel cannot prevent a municipality from terminating city services to nonresidents, the doctrine of laches is likewise inapplicable to nonresidents.
Stove House argues that the trial court properly entered a summary judgment in its favor because, it says, the oral agreement between Huntsville and the landowners is enforceable under the implied-contract theory set out in Bethune v. City of Mountain Brook, 293 Ala. 89, 300 So.2d 350 (1974). Stove House also asserts that this Court cannot consider Huntsville's arguments as to why the implied-contract *192 theory should not apply because, it says, Huntsville failed to present these arguments in the trial court. Stove House further contends that, to the extent the trial court may have relied upon the doctrines of equitable estoppel and laches, the trial court properly entered a summary judgment in its favor.
Because affirmative defenses are threshold issues, we must determine the applicability of the doctrines of equitable estoppel and laches before we address the merits of whether Huntsville has a duty to provide city services to the tax islands and whether it may terminate those services. First, we conclude that equitable estoppel does not prevent Huntsville from terminating city services to the landowners because the landowners have no vested rights to city services. See Dean Sausage, 889 So.2d at 570 (quoting Joyner, 698 So.2d at 125). We also conclude that laches should not be applied against Huntsville because the defense should not be applied against municipalities. In King v. Campbell, 988 So.2d 969 (Ala.2007), this Court quoted from Greenwood v. State ex rel. Bailes, 230 Ala. 405, 407, 161 So. 498, 499 (1935), as follows:
"`Reduced to the last analysis, the defense sought to be interposed is in the nature of an estoppel. But this court in State ex rel. Lott v. Brewer, 64 Ala. 287, [298 (1879),] declared that estoppels against the state cannot be favored, and that though they may arise in some instances, yet, upon the broad ground of public policy, they cannot arise, certainly as to the exercise of governmental functions, "from the laches of its officers."'"
This Court has applied this rule to the actions of municipal officials. See State v. City of Gadsden, 216 Ala. 243, 113 So. 6 (1927). We therefore reject Stove House's defense of laches. Moreover, Stove House's defense of laches based upon failing memories as to the terms of the oral agreement is inherently inconsistent with Stove House's alternative theory of the existence of an implied contract.
We now turn to Stove House's alternative contention that an implied contract exists between Huntsville and the landowners. In its brief to this Court Huntsville asserts that Stove House may attempt to argue that Bethune allows a party seeking to enforce an oral agreement with a municipality to succeed on an implied-contract theory, even though § 11-47-5 provides that "[c]ontracts entered into by a municipality shall be in writing, signed and executed in the name of the city or town by the officers authorized to make the same and by the party contracting." Huntsville then attempts to distinguish Bethune from the present case. Huntsville concludes that any alleged oral agreement between Huntsville and the landowners remains executory in nature, that Bethune is distinguishable because it did not deal with an executory contract, and that, therefore, any implied contract in the present case is unenforceable.
Stove House responds by first contending that this Court cannot consider Huntsville's arguments attempting to distinguish Bethune because, it asserts, those arguments are raised for the first time on appeal. Stove House asserts that Huntsville so heavily relied upon the Court of Civil Appeals' holding in Dean Sausage that it failed to provide the trial court with any reason why the law of implied contract set out in Bethune, and clearly argued by Stove House in its brief in support of its summary-judgment motion, should not apply. Stove House then notes the well-established law that "[t]his Court cannot put a trial court in error for failing to consider evidence or accept arguments that, according to the record, were not *193 presented to it." Gotlieb v. Collat, 567 So.2d 1302, 1304 (Ala.1990).
As previously noted, Stove House, in its motion for a summary judgment, quoted Bethune, 300 So.2d at 352, for the proposition that a "municipal corporation may be held liable on an implied contract." Although Huntsville's brief in opposition to Stove House's summary-judgment motion noted that Stove House alluded to an implied agreement between the parties, Huntsville wholly failed to rebut Stove House's assertion of the applicability of the implied-contract theory or to distinguish this case from Bethune. Simply stated, Huntsville made no mention of Bethune, a decision of this Court, in the trial court. Huntsville stated only that
"the appellate court [the Court of Civil Appeals] in Dean Sausage spoke in terms of a `formal contract or agreement,' not an implied contract or an uncertain agreement or understanding. Because it is undisputable that there is no formal contract for the provision of municipal services to tax islands, [Huntsville] has no duty to provide same to the tax islands."
Stove House attached exhibits to its motion for a summary judgment indicating that Huntsville had provided city services to the landowners since 1956 and that it was doing so pursuant to an oral agreement entered into by Huntsville and the landowners. Huntsville's brief in opposition to Stove House's summary-judgment motion asserted that Stove House had offered no evidence of an implied agreement. Huntsville there asserted that the previous and current attorneys for Huntsville "have no knowledge of any contract at all between the owners of the tax islands and [Huntsville]." In its principal brief before this Court, Huntsville notes that the city attorney acknowledged the existence of "an informal understanding between the original manufacturers and industrialists located on the tax islands at the time of their formation and [Huntsville] in or around the time of the annexation in 1956." Huntsville's brief at p. 42 (emphasis in original). This Court recognizes that "[a]n implied contract arises where there are circumstances which, according to the ordinary course of dealing and common understanding, show a mutual intent to contract...." Broyles v. Brown Eng'g Co., 275 Ala. 35, 38, 151 So.2d 767, 770 (1963). The materiality of factual disputes as to the terms of any implied contract between Huntsville and the landowners turns on the availability to Huntsville of arguments that support distinguishing Bethune.
Huntsville's motion to alter, amend, or vacate the trial court's order entering a summary judgment for Stove House and denying its motion for a summary judgment also failed to address Stove House's argument that a municipality may enter into an implied contract. Huntsville reiterated its contention that, absent a formal contract, it owed no duty to the landowners to provide them city services and further contended that the trial court erred to the extent it might have relied upon the minutes of the Huntsville City Council meetings as evidence of an agreement obligating Huntsville to provide the landowners city services. Once again, Huntsville failed to address the import of this Court's decision in Bethune.
Huntsville contends that Stove House's treatment of Bethune in the trial court was confined to a single sentence. We previously quoted that sentence; suffice it so say that its brevity does not deprive it of clarity. It unquestionably afforded the trial court enough information to permit it to base a decision on an implied contract. Further, Bethune's problems for the position taken by Huntsville are neither subtle *194 nor abstract. In Bethune this Court noted the predecessor to § 11-47-5, strenuously relied upon by Huntsville in the trial court and providing that "contracts entered into by a municipality shall be in writing, signed and executed in the name of the city or town," but then stated that "[w]e cannot accept the City's argument that any agreement made by a city which are [sic] not in writing are [sic] void." 293 Ala. at 93, 300 So.2d at 352.
Huntsville further attempts to excuse its disregard of the well-established law that an appellant may present this Court only with arguments that it presented to the trial court. Huntsville states:
"[Huntsville] would have never discussed [in its principal brief to this Court] whether any alleged contract between it and the former owners of the tax islands was executory if Stove House had not raised the implied-contract defense in Bethune in the trial court in the first place. As such, it would be fundamentally unfair to hold that [Huntsville] is procedurally barred from arguing that Stove House's implied-contract defense does not apply. Not only was this defense, in actuality, given little attention by Stove House at the trial court level, but [Huntsville] has no idea whether the trial court actually relied upon this defense in ruling in Stove House's favor because the summary-judgment order contains no rationale."
Huntsville's reply brief at p. 29 (citations to the record omitted).
Huntsville thus argues that it raised the Bethune issue in its principal brief before this Court only because Stove House had raised it in the trial court. However, it is fundamentally unfair to reverse the judgment of the trial court by distinguishing Bethune as Huntsville, for the first time on appeal, argues we should do. "[T]he appellate court can consider an argument against the validity of a summary judgment only to the extent that the record on appeal contains material from the trial court record presenting that argument to the trial court before or at the time of submission of the motion for summary judgment." Ex parte Ryals, 773 So.2d 1011, 1013 (Ala.2000); see also Andrews v. Merritt Oil Co., 612 So.2d 409, 410 (Ala.1992) ("This Court cannot consider arguments raised for the first time on appeal; rather, our review is restricted to the evidence and arguments considered by the trial court."). Because Huntsville made no attempt to distinguish Bethune before the trial court, it is now precluded from seeking reversal of the summary judgment on its theory that Bethune is inapplicable, and we must affirm. We, of course, express no opinion on the merits of the question whether Bethune is distinguishable on the facts here presented.

IV. Conclusion

We affirm the trial court's summary judgment in favor of Stove House.
AFFIRMED.
SEE, WOODALL, STUART, SMITH, and BOLIN, JJ., concur.
PARKER and MURDOCK, JJ., concur in the result.
COBB, C.J., dissents.
COBB, Chief Justice (dissenting).
I respectfully dissent. This case involves "tax islands" in which the businesses and residents located therein have received services from the City of Huntsville without cost for more than 50 years, all without benefit of any written agreement. The gist of the majority's opinion that Huntsville is nonetheless bound to continue its service to the tax island in question is based upon its conclusion that *195 Huntsville failed to advocate to the trial court that the case of Bethune v. City of Mountain Brook, 293 Ala. 89, 300 So.2d 350 (1974), is distinguishable. This is not a situation in which the legal rationale of Bethune was not presented to the trial court. Rather, the majority holds that because Huntsville did not advocate that the rationale of Bethune was inapplicable to its situation, the judgment of the trial court may not be reversed based on the trial court's failure to discern that fact for itself. If the majority opinion is properly regarded by this Court as precedent, it would seem that henceforth this Court may not reverse summary judgment when the trial court had misapplied the rationale of an appellate opinion to reach its conclusion and the nonmovant fails to demonstrate that it has argued that misapplication to the trial court.
For example, consider a case where a plaintiff sues a defendant chemical company for damage caused by the plaintiff's contact with chemicals manufactured by the company, and the company moves for a summary judgment based on the statute of limitations because, under Garrett v. Raytheon Co., 368 So.2d 516 (Ala.1979), the period between the date of the plaintiff's last exposure and the date of filing the action exceeded the limitations period. If the trial court enters a summary judgment for the defendant and the plaintiff cannot show that it argued that Garrett has no application because this Court overruled it in Griffin v. Unocal Corp., 990 So.2d 291 (Ala.2008), the rationale of the majority opinion suggests that this Court must nonetheless affirm the summary judgment. That rationale is wrong.
I believe that the majority's reliance here on the well-settled rule that this Court will not reverse a judgment of a trial court on an issue not first presented to the trial court, see Ex parte Ryals, 773 So.2d 1011, 1013 (Ala.2000), and Andrews v. Merritt Oil Co., 612 So.2d 409, 410 (Ala. 1992), is based upon a false premise. In fact, the issue before the trial court, presented by Stove House, was whether Bethune warranted a holding that an implied contract for services existed between Huntsville and Stove House as a matter of law. Accordingly, I believe that it is well within the province of this Court to examine the applicability of Bethune to the facts presented here. Our law is well settled that the trial court is presumed to know the law, a concept that surely includes the trial court's correct application of caselaw. Ex parte Atchley, 936 So.2d 513 (Ala.2006), Apicella v. State, 945 So.2d 485, (Ala.Crim. App.2006), and Carter v. Carter, 666 So.2d 28 (Ala.Civ.App.1995). The issue presented by Bethune, i.e., whether there were facts to show an implied contract between Stove House and Huntsville as a matter of law, was presented to the trial court, and it is this Court's responsibility to consider whether the trial court reached the correct result. That is, it is also settled law that this Court reviews the trial court's decisions on questions of law de novo, and it is this Court's obligation as an appellate court to undertake that review. Board of Trs. of Univ. of Alabama v. American Res. Ins. Co., [Ms. 1061492, May 2, 2008] 991 So.2d 668 (Ala.2008), Special Assets, L.L.C. v. Chase Home Fin., L.L.C., 991 So.2d 668 (Ala.2007), and Pinkerton Sec. & Investigation Servs., Inc. v. Chamblee, 961 So.2d 97 (Ala.2006).
Finally, I note that this case ultimately represents a waste of both judicial resources and the resources of the parties. For all that appears in the opinion, Huntsville may simply refile its action for a judgment declaring that it is not obligated to provide further city services to Stove House and this time argue the inapplicability *196 of Bethune. The majority opinion achieves neither justice nor economy.
NOTES
[1] The two other tax islands are the Mallory Plant tax island and the John Blue tax island. The John Blue tax island was annexed before this litigation began, and the Mallory Plant tax island was not included in this litigation.
[2] Stove House did not assert the affirmative defense of laches in its answer to Huntsville's complaint; therefore, the defense would ordinarily be deemed to have been waived. See Wallace v. Alabama Ass'n of Classified Sch. Employees, 463 So.2d 135, 137 (Ala.1984) (quoting Funding Sys. Leasing Corp. v. Pugh, 530 F.2d 91, 96 (5th Cir.1976) ("a defendant 'cannot revive [the waived affirmative defense] in a memorandum in support of a motion for summary judgment'")). However, the defense is not waived here because Stove House raised the defense of laches in its summary-judgment motion without objection from Huntsville. Huntsville even addressed the merits of the defense in its brief in opposition to Stove House's summary-judgment motion. See Smith v. Sushka, 117 F.3d 965, 969 (6th Cir. 1997) ("Failure to raise an affirmative defense by responsive pleading does not always result in waiver. The purpose of Rule 8(c) of the Federal Rules of Civil Procedure is to give the opposing party notice of the affirmative defense and a chance to respond." (internal citation omitted)); Alexander v. Consumers Illinois Water Co., 358 Ill.App.3d 774, 780, 838 N.E.2d 963, 968, 298 Ill.Dec. 70, 76 (2005) ("an affirmative defense is not waived, despite the fact that it was not raised in an answer to a complaint, if the defense is subsequently raised without objection in a motion for summary judgment").